Johnston and others, Respondents, vs. Chicago & North-western Railway Company, Appellant.

*December 6, 1932—January 10, 1933.*

228

For the appellant there were briefs by *J. F. Baker* and *Llewellyn Cole,* both of Milwaukee, and oral argument by *Mr. Cole.*

For the respondents there was a brief by *Benton, Bosser & Tuttrup* of Appleton, and oral argument by *Homer H. Benton.*

FAIRCHILD, J.   This was an initial railway shipment of goods by respondents and this fact may explain the absence of any evidence of the length of time within which the flowers might be safely transported or held in transit without loss, and the failure to effect an agreement for special handling of the car.   The car had been in the process of loading for several days.

The duties and obligations of the appellant are outlined in the schedules for train movements, including the practices followed in switching cars to the plant of the Fulton Market & Cold Storage Company and under the stipulations in the bill of lading.   We start the consideration of this case with the proposition that the carrier was not bound to transport the carload of peony buds by any particular train, or otherwise than with reasonable dispatch.   *Stephens v. Chicago*

*& N. W. R. Co.* 200 Wis. 181, 183, 227 N. W. 875. In the case cited Mr. Justice STEVENS said:

"The basis of liability for delayed transportation by rail is negligence,—the failure to exercise due diligence in maintaining train schedules."

*Wallace-Farmer v. Davis* (Iowa), 199 N. W. 307, 308, a case in which the contract did not provide for delivery of a shipment at a particular time, points to the existence of the rule where loss results from transportation of goods by a common carrier that the burden is on the shipper to show an unreasonable delay, and in the application of the rule to that case the following statement was made:

"A railroad company is ordinarily under no duty to transport stock with more dispatch than is provided by its regular schedule of trains existing at the time of the shipment in question, and a shipper is presumed to have consented to the carriage of his stock by a regular scheduled train in the absence of a contract for special service or an earlier delivery."

There is an absence of any evidence in the record now before us of a departure from the regular schedule which in any way supports a claim of negligence in the handling of the carload of peony buds. It arrived at Proviso twenty minutes ahead of time, was moved ahead of schedule from there on, and reached the Western Avenue yard at 2:15 p. m. June 17th. From there it was moved according to the general practices obtaining into the Halstead street district and to its destination at the Fulton Market & Cold Storage Company where it was placed before 6 a. m. June 18th.

There is no controversy over the fact that when the car was opened the buds were found to be damaged. The length of time peony buds will endure without losing their marketability is not established and the evidence does not disclose any suggestion of a likelihood of deterioration if moved

according to schedule in properly cooled cars. But the evidence shows the loading of this car began on the 11th of June and continued until the 16th; that when the car left Appleton the buds were properly packed and in good condition. It may be concluded from this that had the car been delivered earlier loss to respondents would not have occurred. However, duties arising under the agreement, the schedule, and the general practice or custom with relation to moving cars in and out of the Halstead yard district, are not capable of visiting this loss upon the appellant. This was the first shipment by respondents over the railroad of a carload of their buds. They were anxious for a prompt delivery but made no arrangements for a movement of this merchandise under special order. There is testimony of an opinion expressed by one of appellant's employees at Appleton that the car would arrive at its destination in the forenoon of June 17th; also a telegram in which another agent of appellant wired its agent at Appleton that the car should arrive about 4 p. m. June 17th, but this is not evidence as to what were customary and usual steps taken for the transportation of a shipment over the route in question. It amounts to no more than an expression of opinion. The telegram was not communicated in any way to the respondents until long after the sending of it. The statement of the agent as to when the car would arrive at its destination is not relied on by respondents as a guaranty binding upon the appellant. Respondents contend that the statement is of a fact by appellant's agent binding as to a reasonable and customary time required for the movement of the car. But in the absence of some agreement requiring a movement in accordance with that statement the usual schedule would control, and unless there was negligence in relation to the handling of the matter according to the usual schedule no cause of action exists in favor of the shipper.

There is a claim of a dispute on the point of whether or not the car was promptly moved from Western Avenue into the Cold Storage plant, and a witness for the respondents (the traffic manager of the Cold Storage Company) testified to receiving shipments of poultry on this day from Watertown, South Dakota, over the Northwestern Railroad through the Proviso yard, but he did not know the time when the shipment arrived and the movements were without his knowledge. In connection with this testimony he stated his practice in relation to ordering the movement of cars as set forth in the statement of facts. On the other hand, there is positive evidence to the effect that this shipment was transported within the usual and customary time, that there was no unreasonable delay, and no negligence on the part of the appellant. In the absence of special instructions from the shipper there would be nothing to suggest the necessity of resorting to unusual means to place the car at its destination ahead of the usual schedule. There is evidence that the appellant followed instructions given it. When the car reached the Western Avenue yard it was two miles from its destination; although it arrived at the Western Avenue yard ahead of schedule, it was too late to have the benefit of scheduled movement into the Halstead street district that day. The orders of the traffic manager of the Fulton Market & Cold Storage Company on which appellant acted were given in the due course of business and according to usual practices.

The shipment was consigned to the respondents themselves in care of the concern which gave the orders. There was no negligence on the part of the appellant in following the usual schedule and in accepting the directions of the traffic manager of the one designated to receive the shipment. The traffic manager knew of the shipment of the car as early as 3 p. m. June 17th, and at 4 o'clock issued the

instructions referred to. These instructions were carried out. The traffic manager did not expect that the car would come into the Storage under special handling and his concern was to see that it was handled in the ordinary way. The only inferences to be drawn from the evidence are to the effect that the merchandise was moved according to the schedule which then existed, that the difference in time between the arrival of the car and the time scheduled for its arrival at points where there was a difference did not amount to a delay, and all this appears so conclusively as to place the matter beyond serious contention. The appellant was entitled to have its motion for a directed verdict granted. This conclusion makes unnecessary a discussion of other errors assigned.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss plaintiffs' complaint.

FRITZ, J. (*dissenting*). The carload of peony buds in question was promptly transported from Appleton, Wisconsin, until it arrived in the Western Avenue yard at Chicago at 2:15 p. m. on June 17, 1931. That yard is but two miles from the Fulton Market & Cold Storage Company's plant, which was the destination and place of delivery that was specified in the bill of lading. The car was not delivered at that destination until fifteen hours after it arrived at Western Avenue. That it could have been hauled those last two miles and delivered at its destination in thirty minutes after its arrival at Western Avenue at 2:15 p. m. is demonstrated by the fact that on June·20, 1931, two cars were so delivered within thirty minutes after their arrival at Western Avenue at 2:30 p. m.

Under the circumstances, in the final analysis, the ultimate issue is whether the carrier negligently delayed the delivery of that car after it arrived at Western Avenue. The jury found that the carrier was negligent in delivering

the car, and as the trial court ordered judgment for plaintiff on the verdict, there is, on this appeal, but the narrow question of whether there is any credible evidence which under any reasonable view will admit of such inferences as will sustain the jury's finding. If so, neither the trial court nor this court should change that finding, or order judgment notwithstanding the verdict. *Trautmann v. Charles Schefft & Sons Co.* 201 Wis. 113, 228 N. W. 741. Likewise, it is established that it is the duty of a common carrier to exercise the degree of care in moving freight which is suitable to the nature of the shipment, and to forward and deliver it with reasonable promptness and dispatch to the extent of its ability. The very nature and character of a shipment, if perishable, requires a higher degree of attention, care, and diligence than is required in transporting non-perishable freight. *Wooster v. Chicago & N. W. R. Co.* 167 Wis. 6, 10, 166 N. W. 431. Those rules are certainly applicable to the shipment of highly perishable peony buds. With those rules in mind, I cannot agree with the conclusion that the credible evidence in this case will not reasonably admit of inferences which amply sustain the jury's finding that the carrier was negligent. That that evidence is also susceptible to other inferences or is conflicting or contradicted, does not, in law, justify the substitution by the court of its finding for the jury's verdict. Neither should that be done because there is in the record the evidence, which is discussed at length in the majority opinion, and which, standing alone, would of course warrant a jury in finding that the carrier was not negligent. But in that discussion there is overlooked the evidence that other shipments were delivered during the same period of the day at the same destination within thirty minutes after they arrived at Western Avenue. That evidence had a material bearing on the question as to the time usually required for such delivery. True, the defendant contends that the two cars, which were delivered

on June 20, 1931, within only thirty minutes, were handled so promptly because special orders had been given for such delivery. As I read the record, there is no competent evidence to establish that any direct order to that effect had been given to the carrier in relation to those two cars.

The only thing in the record on which the defendant attempts to base its contention that it had received such special orders in relation to those cars is the notation "Special order" on an exhibit, which one of the defendant's witnesses, H. J. Cameron, testified was compiled from certain records, which were made under his supervision as an employee of the carrier in relation to eleven cars (including the car of peonies in suit), which were delivered at Fulton Market & Cold Storage Company's plant in June, 1931. In a column on that exhibit entitled "Special or Regular Handling," there is the notation "Regular" as to all cars excepting that as to those two cars which were delivered on June 20, 1931, the notation is "Special order." No witness testified as to whether or why any such notation was made on the carrier's original records, which were not produced. There was no proof that any order expressly to that effect had been given by or on behalf of either the shipper or the Fulton Market & Cold Storage Company; and there was no explanation excepting that Cameron in answer to the question, "This shows, in fact, the way they were handled," testified (presumably in relation to all cars listed), "Yes, sir, in the usual way in the operation of our railroad system in our business." As compared to that absence of proof as to any basis for that notation, "Special order," on that exhibit, there is the uncontradicted testimony of one of plaintiffs' witnesses, Joseph Loubsky, who, as an employee of the Fulton Market & Cold Storage Company, had charge of the inbound and outbound shipping at its plant, that the inbound cars "never get any special handling, never had a special handling at all; they get the ordinary

handling, so that there would be no possibility of the car being specially hauled over cars coming down in regular trains. The occasion of my telephoning would be so that there would not be any liability of· having the car delayed. I telephoned to prevent delay; they could not expect any special handling service or special engine."

That testimony certainly challenged the basis and the significance of the notation "Special order" on that exhibit. Until there was some proof that there was some basis or warrant for that notation, the exhibit might well have been excluded when plaintiffs objected to its admission. However, if that unexplained notation was properly in evidence, in view of Loubsky's testimony, it was not conclusive, and it was still for the jury to determine whether special orders had, in fact, been given; and whether because of such orders the two cars delivered on June 20, 1931, had been given special and unusual handling so that the actual delivery thereof, within thirty minutes after arriving at Western Avenue at 2:15 p. m., afforded no basis for finding negligence in delaying the delivery of the car in suit.

Furthermore, and particularly so in the absence of any proof as to the nature or· form of any orders as to shipments, which were to be given special or more expeditious handling by the carrier, the following facts, established without dispute, well warranted the inference that the carrier had such ample knowledge and notice as to the highly perishable nature and the necessity for delivery of the shipment in suit immediately upon its arrival at Western Avenue at 2:15 p. m. that it should have likewise considered and noted that shipment as requiring special handling. Thus the evidence establishes beyond dispute that plaintiffs, who had theretofore been using motor trucks for such shipments, were solicited and induced by defendant to send the shipment in suit by rail. Before doing so they discussed with defendant's representative at Appleton the necessity of prop-

erly icing the refrigerator car in which the shipment was to be made. He assured them as to the sufficiency of the icing, which would be attended to by the carrier, and that the car would be delivered at its destination at 8 a. m. on June 17, 1931. That representative knew of the perishable nature of the peonies on the day of shipment, June 16, 1931, when the temperature was 78° maximum, Fahr.; and he billed the shipment on a specially colored bill of lading, which was headed "Perishable," and which accompanied the car. He also, without even any suggestion from plaintiffs, at 8:55 a. m. on June 17, 1931, traced the movement of the car by telegraphing to the defendant's general freight agent at Chicago to "Wire quick exact time delivered to consignee;" and at 3:10 p. m. he received a reply from that agent that the car "Should arrive Fulton market 4 o'clock p. m." The temperature at Chicago on June 17, 1931, was ·90° maximum, Fahr. Manifestly, in view of defendant's knowledge of all of those facts, the defendant had ample notice that the car in suit required "special handling," in point of time, within any meaning that can reasonably be ascribed to that term, or the term "Special order," as noted on the exhibit on which the two cars delivered on June 20, 1931, were listed. Nevertheless, instead of delivering that car within half an hour after it arrived at Western Avenue at 2:15 p. m. or even delivering it by 4 p. m. as its general agent had wired at 3:10 p. m. should be done, the carrier delayed doing anything until either 3 or 4 p. m. in relation to that car, after its arrival at Western Avenue at 2:15 p. m. Then it merely informed Loubsky by telephone that the car had arrived. Loubsky testified that it was then too late to get any quick action on the car. So he replied that it was to be "set in preference" with "any other loads that may arrive." Such directions, at that late hour, were usually complied with by delivering the cars during the follow-

ing night; and that practice was followed by delivering the car in question before 6 a. m. on June 18, 1931. Although that evidence as to the directions given by Loubsky, and as to the practice which followed, afforded basis for finding that the delay was not due to negligence of the carrier, it does not conclusively refute other inferences, of which the evidence admits, that afford sufficient basis for finding that the carrier was negligent in failing to deliver the shipment by at least 4 p. m. on June 17, 1931. Consequently, the jury's finding that the defendant was negligent should not be disregarded or changed to the contrary by the court.

I am authorized to add that Mr. Justice WICKHEM and Mr. Justice NELSON join herein.