St. Louis-San Francisco Ry. Co., Kurn, Trustee, *v.* J. W. Myers Commission Co.

4-7543                                                185 S. W. 2d 288

Opinion delivered February 19, 1945.

*E. G. Nahler* and *Warner & Warner,* for appellant.

*C. E. Izard* and *R. S. Wilson,* for appellee.

ROBINS, J. Appellants, J. M. Kurn and John G. Lonsdale, trustees in bankruptcy of the St. Louis-San Francisco Railway Company, seek by this appeal to reverse judgment recovered by appellee against them, based on verdict of trial jury for $676.46, in a suit instituted by appellee, a produce merchant of Van Buren, for damages alleged to have been sustained by appellee for delay in the delivery of a carload of green corn shipped by appellee from Van Buren, Arkansas, to View, Texas, for delivery to an army camp there.

Appellee alleged in his complaint that on July 17, 1942, he sold the War Department a carload of green corn, for $1.49 per bag, to be delivered on July 24, 1942; that appellee was advised by the agent of appellants at Van Buren that, if the carload of corn was loaded there by 9:30 p.m. on the evening of July 22, for shipment *via* appellants' line, delivery thereof could be made at View, Texas, on July 24; that appellee thereupon proceeded to load a freight car with 454 sacks of green corn, which was accepted for shipment from Van Buren to View, Texas, by appellants at 9:00 p.m. on July 22, and that

1034

appellee prepaid freight and icing charges in the sum of $196.28; that the invoice price of said shipment was $676.46; that if the information which appellants' agent gave appellee, as to the proper time to load said car for it to be delivered on July 24 was not correct, such fact was known or should have been known to appellants and their agent; that by the exercise of care and diligence the delivery of said car could have been made at its destination on July 24, but that appellants failed to make said delivery until 4:00 p.m. on July 25, 1942, at which time the consignee refused to accept the shipment and refused to pay therefor.

Appellants in their answer denied the material allegations of the complaint and alleged that appellee's rights were defined and fixed by the tariffs and schedules on file with the Interstate Commerce Commission and also by the terms of the bill of lading issued by appellants to cover the shipment.

Appellee testified that he had a conversation with the local agent of appellants at Van Buren on July 21 in regard to the proposed shipment and that this agent told appellee that he should load the car on July 22 for arrival at destination on July 24; that he, appellee, could have loaded earlier but relied on "that contract" and loaded on the 22d; that he informed the agent that it was a shipment to the government and had to be there on time; that he did not sign the bill of lading, but took it from the agent and put it in his files; that the car in question was destined to Camp Barkeley, at View, Texas; that if the car had moved over the line of the Texas & Pacific Railway Company "from Fort Worth" he could have made delivery in the required time.

The agent of appellants denied the conversation in regard to the time at which it was necessary to load the shipment in order to be delivered on July 24 as detailed by appellee. The assistant superintendent of appellants testified that the regular routing of the shipment was from Van Buren to Monette and thence to Fort Worth over appellants' line and from Fort Worth to View over

the Gulf, Colorado & Santa Fe Railway Company; that the distance from Fort Worth to View *via* "Santa Fe" is 220 miles, and from Fort Worth to View by the "Texas & Pacific" it is 238 miles.

There was introduced in evidence an agreed statement of facts which, in part, is as follows:

"2. The published tariff operating schedule of defendants in effect at the time of said shipment, provided for departure from Van Buren, Arkansas, at 9:30 p.m. July 22, 1942, and arrival *via* defendants' railroad at Fort Worth, Texas, at 5:30 a.m. July 24, 1942.

"3. The published tariff operating schedules of the Texas & Pacific Railway Company, in effect at the time of said shipment, provided as follows: Train 69 left Fort Worth at 5:30 a.m. July 24, 1942, and arrived at Sweetwater, Texas, at 2:55 p.m. the same date; train 67 left Fort Worth at 2:30 p.m. July 24, 1942, and arrived at Sweetwater at 10:40 p.m. the same date; train 53 left Fort Worth at 8:30 p.m. July 24, 1942, and arrived at Sweetwater at 3 a.m. July 25, 1942. The only connection at Sweetwater to View, Texas, the destination of said shipment, and which is 36.2 miles from Sweetwater, was *via* Gulf, Colorado & Santa Fe Ry. Co., and under the published operating schedules in effect on said dates its first train, No. 52, left Sweetwater at 1 p.m. and arrived at View at 2 p.m.

"4. The published tariff operating schedules of the Gulf, Colorado & Santa Fe Ry. Co. in effect at the time of said shipment provided as follows: Train 51 left Fort Worth, Texas, at 8:25 p.m. July 24, 1942, and arrived at Brownwood, Texas, 2:15 a.m. July 25, 1942; train 33 left Brownwood at 9:20 a.m. July 25, 1942, and arrived at View, Texas, destination of said shipment, at 2:30 p.m. the same date.

"5. The said car departed from Van Buren, Arkansas, in the first section of train 732 of defendants at 10:30 p.m. July 22, 1942, and arrived at Fort Worth, Texas, at 6:56 a.m. July 24, 1942. Upon arrival at Fort

Worth said car and the waybill thereof were promptly delivered there to Gulf, Colorado & Santa Fe Railway. Said car left Fort Worth in Gulf, Colorado & Santa Fe train 51 at 8:54 p.m. July 24, 1942, and arrived in the same train at Brownwood, Texas, at 2:50 a.m. July 25, 1942. It departed from Brownwood in Santa Fe train extra 4050 at 9:45 a.m. July 25, 1942, and arrived at View, Texas, its destination, at 1:05 p.m. the same date.''

The court, over the objection of appellants, gave, among others, the following instruction:

''4. Gentlemen of the jury, the business of carrying freight and passengers in this country is mostly done by corporations who must, of necessity, act through their agents, and you are instructed that such agents have the general authority to bind the carrier and to make all reasonable contracts of carriage, within the scope of their apparent authority.

''You are instructed then, that if you find from a preponderance of the evidence that J. H. Henson, an agent of the defendant company, entered into a contract with the J. W. Myers Commission Company for the delivery of the car in question upon a certain definite date, and that such a contract was within the scope of the apparent authority of J. H. Henson, and that said agreement, if any, was not later changed or modified by the parties, and if you further find that there was a breach of said contract of delivery, you will find for the plaintiff.''

In other portions of instructions given by the court reference was made to the duty of the carrier to comply with a special agreement as to delivery of goods within a specified time.

The shipment involved here was an interstate one, and, as such, was governed by the various acts of Congress and by the published tariffs and schedules filed in accordance with the Interstate Commerce Act, 49 U.S.C.A., § 1 et seq.; Railway Express Agency, Inc., v. J. W. Myers Commission Company, 184 Ark. 1123, 45 S.

W. 2d 14. The underlying principle of these acts and the decisions construing them is that all shippers must be governed by the published tariffs and schedules, and that any special contract as to carriage of an interstate shipment not authorized thereby and not available alike to all shippers is void.

In the case of *Chicago & A. R. Co.* v. *Kirby,* 225 U. S. 155, 32 S. Ct. 648, 56 L. Ed. 1033, Ann. Cas. 1914A, 501, it was contended by the shipper that the carrier agreed by special oral contract made by the carrier's local agent with the shipper, to transport a shipment of horses from a point in Illinois to New York, so as to arrive for a special market available late in the month of January, 1906, and the shipper sought damages because his horses did not reach New York in time for the sale. The supreme court of the United States in that case held that the alleged agreement relied upon by the shipper was void and unenforceable. Other decisions of the supreme court of the United States, in which a similar holding has been made are: *Southern Railway Company* v. *Prescott,* 240 U. S. 632, 36 S. Ct. 469, 60 L. Ed. 836; *Atchison, Topeka & Santa Fe Railway Company* v. *Robinson,* 233 U. S. 173, 34 S. Ct. 556, 58 L. Ed. 901; *Davis* v. *Cornwell,* 264 U. S. 560, 44 S. Ct. 410, 68 L. Ed. 848; *Shier* v. *American Railway Express Co.,* 234 Mich. 505, 208 N. W. 746.

This court, in the case of *The Pullman Company* v. *Anderson, Administrator,* 205 Ark. 1056, 172 S. W. 2d 431, said: "Permission to one customer to make use of a train other than those approved or allowed by the schedule would be to confer on him a special favor in manifest violation of the terms and spirit of the (Interstate Commerce) act."

Appellee argues that this case is ruled by our decision in the case of *C., R. I. & P. Ry. Co.* v. *Stallings,* 132 Ark. 446, 201 S. W. 294. In that case a recovery by a shipper against the carrier was allowed on the ground that the carrier's agent had negligently advised the shipper to load his cattle at a certain time, assuring the shipper that a freight train would pick up the car shortly after it was loaded. Relying on the agent's statement the

shipper loaded his cattle into the car, at the time designated, but the train passed without stopping to pick up the car in which the cattle had been loaded. As a result of the ensuing delay some of the cattle suffered injuries causing loss to the shipper. This court held that the evidence established liability of the carrier for the negligent act of its agent in giving false and misleading information to the shipper which, when acted upon by the shipper, caused him to suffer financial loss. In the case at bar any issue as to negligence of appellants' agent in misleading appellee as to the proper time to load his corn at Van Buren for the delivery on the day specified was excluded by the provisions of paragraph 8 of the agreed statement of facts; nor was any such issue submitted to the jury under the court's instructions. On the other hand, the lower court, by instruction No. 4, directed the jury to find whether there was a special oral contract by the carrier to complete transportation by a certain time and to return a verdict in favor of appellee if the jury found that there was in fact such a contract and that it was breached to appellee's damage.

In giving this instruction No. 4, and other instructions by which the jury was permitted to take into consideration the special oral contract alleged to have been made by appellee with the agent of appellants for transportation and delivery of the shipment on a certain date, the trial court committed error.

It is argued on behalf of appellee that, even if there was no valid contract for delivery of the shipment on a day certain, there was evidence from which a jury could find that appellants did not exercise the required diligence in transporting and delivering the car of corn. A common carrier must, under the law, exercise reasonable care and diligence in forwarding as expeditiously as possible freight delivered to it for transportation. But, in doing this, the carrier is not ordinarily required to furnish facilities other than those provided under published schedules and tariffs. *St. Louis-San Francisco Railway Company* v. *Greig*, 182 Ark. 261, 31 S. W. 2d 290; *Wallace-*

*Farmer* v. *Davis, Agent* (Ia.), 199 N. W. 307; *Johnston* v. *Chicago & N. W. Ry. Co.*, 210 Wis. 227, 246 N. W. 336.

Appellee stated in his testimony that, if the shipment had been handled by the Texas & Pacific Railroad Company out of Forth Worth, delivery of the car at View could have been made on July 24, but we find no support whatever of this conclusion of appellee in the agreed statement of facts; and, aside from the agreed statement of facts, there is nothing in the record showing schedules of trains on the lines involved. It appears from the agreed statement that this car of corn arrived at Fort Worth at 6:56 a.m. and that the first scheduled train over the line of the Texas & Pacific Railroad Company left Fort Worth for Sweetwater (the junction point between that railroad line and the Gulf, Colorado & Santa Fe Railroad) at 2:30 p.m. and arrived at Sweetwater at 10:40 p.m. of the same day. It is true that the schedule of appellants called for arrival of its train, from Monette at Fort Worth at 5:30 a.m., but, even if it had arrived on time, the car could not have been transferred to the line of the Texas & Pacific Railroad Company in time to be attached to its early train which left Fort Worth for Sweetwater at 5:30, precisely the same time the appellants' train was due to reach Fort Worth. There was nothing in the testimony or agreed statement of facts to show that there was any freight train, scheduled to leave Sweetwater after 10:40 p.m., which would arrive at View before midnight. There was, therefore, no showing whatever upon which could be based a finding that this shipment was not handled as expeditiously as the train service provided under the regular schedules would permit.

The parties have stipulated that after the car of corn was refused by the consignee it was sold by appellants, in accordance with appellee's direction, for the best market price obtainable at destination, and that $121, the proceeds of this sale, was tendered by appellants to appellee before the bringing of the suit. This tender was refused by appellee and was again made in the answer filed by appellants.

1040

It follows from what has been said that the judgment of the lower court must be modified so as to reduce it to the sum of $121, the amount received by appellants for the shipment, and, as so modified, same is affirmed, and the costs of both courts are adjudged against appellee.