# RAILWAY EXPRESS AGENCY
## v.
## SMITH.
### Civ. A. No. 3601.

United States District Court
E. D. South Carolina,
Columbia Division.
Dec. 10, 1953.

McKay & McKay, Columbia, S. C., for plaintiff.

Robinson, Robinson & Dreher, Columbia, S. C., for defendant.

WYCHE, District Judge.

In this case the plaintiff brought suit to recover express charges on a shipment of peaches from Columbia, S. C., to Baltimore, Maryland, in the month of July, 1952. The complaint alleged the refusal of the Baltimore consignee to accept delivery, necessitating a forced sale by plaintiff of this perishable commodity, netting the sum of $55, and leaving a balance due on the express charges in the amount of $184.09.

In his answer defendant admitted the shipment but alleged that plaintiff had delayed the shipment en route to the consignee to such an extent that the market was closed by the time the peaches reached Baltimore, although plaintiff had assured defendant the shipment would reach the consignee in Baltimore in ample time for the early morning market of July 3, 1953. Defendant counterclaimed for the value of the peaches, $650, less proper freight charges.

At the hearing before me the testimony of plaintiff's Columbia agent and of the defendant was taken. The deposition of the Baltimore consignee was read and placed in evidence, as were defendant's interrogatories to plaintiff and the answers thereto, the shipper's receipt, a Department of Agriculture bulletin showing the condition of the Baltimore peach market on July 3, 1952, and the pertinent I.C.C. rules as to express companies.

Based on the pleadings, testimony and exhibits, I make the following findings of fact and conclusions of law:

### Findings of Fact

1. On July 1, 1952, the defendant, a peach grower of Lexington County, South Carolina, had arranged to ship, by motor truck under the control of the South Carolina Peach Growers' Association, some 250 half-bushel baskets of Golden Jubilee and Red Haven peaches to a Baltimore consignee for disposition on the early morning (twelve midnight to seven A.M.) market of July 3.

2. During the afternoon of July 1, defendant learned that the truck would be fully loaded before it reached his farm. He was advised to attempt shipment by railway express.

3. Defendant telephoned plaintiff's Columbia agent and was assured the peaches would leave Columbia on an early morning Seaboard Air Line train on July 2, arriving in Washington about 2:30 P.M. the same day, and that they would reach Baltimore later the same evening, in ample time for the early morning market of July 3.

4. Relying on this assurance defendant delivered the peaches to plaintiff's Columbia office at 10:00 P.M., July 1. The peaches were loaded on Seaboard train 8 at 3:04 A.M. July 2, in Columbia, and reached Washington at 2:25 P.M. July 2.

5. Although trains carrying express from Washington to Baltimore left Washington at 6:05 P.M. and at 11:25 P.M. on July 2, this shipment of peaches did not leave Washington until 6:00 A.M. July 3, on Baltimore & Ohio train 140.

6. The shipment arrived in Baltimore at 7:30 A.M. July 3 and was offered to the consignee at 10:15 A.M., at which time the consignee refused to accept delivery.

7. By the time the peaches were offered for delivery to the consignee, there were no buyers left on the Baltimore market, and the market was closed the following three days, July 4, 5, 6, 1952, therefore the shipment of peaches was practically worthless at the time of delivery; the actual market value between 10:00 and 11:00 A.M. July 3 was $55, the amount for which plaintiff sold the peaches.

8. Had the shipment been delivered in time for the early morning market of July 3, 1952, the consignee could have disposed of the peaches at the prevailing prices.

9. On July 3, 1952, South Carolina Golden Jubilee and Red Haven peaches, diameter two inches and up, were reasonably worth at least $2.50 per half bushel on the Baltimore market. The market value of this shipment of peaches was $625.

10. The correct express charge for this shipment of peaches was $239.09.

11. In moving this shipment of a perishable commodity from the consignor at Columbia, S. C., to the consignee at Baltimore, Md., the plaintiff failed to transport with reasonable dispatch.

### Conclusions of Law

1. In an action by a carrier for unpaid transportation charges, the shipper is entitled to plead and prove, if he can, damages by way of setoff or counterclaim for failure of the carrier to perform its obligations. Chicago & Northwestern R. R. Co. v. Lindell, 281 U.S. 14, 50 S.Ct. 200, 74 L.Ed. 670; Norton v. Shotmeyer, D.C.N.J., 72 F.Supp. 188. Cf. Eastern Shore of Virginia Produce Exchange, Inc., v. N. Y. Central R. Co., 4 Cir., 97 F.2d 565.

2. Under Rule 7 of official Express Classification No. 35 of the Interstate Commerce Commission, the plaintiff express company is not bound to transport by any particular train or vessel, or in time for any particular market, but it is required to transport with reasonable dispatch. Although it did not specifically contract with defendant to transport this shipment in time for a particular market, still the only reasonable conclusion at which I can arrive in this case is that this shipment would have reached Baltimore in time for the

early morning market of July 3 if plaintiff had performed its duty to transport with reasonable dispatch. A delay of almost sixteen hours in Washington, on the shipment of a perishable commodity such as peaches, can hardly be called "reasonable dispatch".

3. The measure of damages in a case of this nature is the difference between the market value of the shipment if it had arrived on time, and its reduced market value caused by the carrier's delay, less the transportation charges.

4. Here the carrier has collected the reduced market value of $55. It is entitled to the additional amount of $184.-09 to make up its total transportation charge of $239.09. The shipper is entitled to the value of his shipment, $625, less the express charge of $239.09, or a net amount in his favor of $385.91, with costs to be assessed against plaintiff.

Judgment will be entered accordingly.