No. 19,234.

DENVER-ALBUQUERQUE MOTOR TRANSPORT, INC. *v.*
THOMAS H. GALLIGAN, D/B/A GALLIGAN
WHOLESALE MEAT COMPANY.
(358 P. [2d] 28)

Decided December 19, 1960.

Messrs. McCARTHY AND WHITE, for plaintiff in error.

Messrs. GALLIGAN AND FOLEY, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE MOORE.

WE will refer to plaintiff in error as defendant and to defendant in error as plaintiff.

The complaint of plaintiff set forth two claims against defendant. We are concerned here only with the second claim, wherein it is alleged that as a common carrier of a shipment of beef chucks from plaintiff to consignee in Miami, Florida:

" * * * the defendant was negligent in not delivering the perishable property (meats) within a reasonable time, and failure to deliver caused a delay of 36 hours beyond the agreed time for delivery.

"3. That due to said delay, occasioned by defendant's failure to use reasonable dispatch, consignee refused the property (meats) in question, and plaintiff was forced to sell same at a loss, including telephone expense and shrinkage, of $2,841.04 in order to mitigate damages and forestall a total loss of the meats.

"4. That the negligence of the defendant in not delivering the goods in a reasonable time was the proximate cause of the damages suffered by the plaintiff in the amount of $2,841.04."

The allegations of negligence were denied by defendant. The evidence offered by plaintiff showed the delivery of the shipment to defendant; that it was scheduled for delivery to the consignee on or before 7:00 A.M. on March 3rd, 1958; that it did not arrive until approximately thirty-six hours subsequent to the appointed time; that the delay was caused by a breakdown of the cooling system of the engine in the tractor; and that the plaintiff was forced to sell at a loss following the refusal of the consignee to accept the meat.

The evidence offered by defendant established that

the delay in delivery was caused by a mechanical break-down about sixty miles east of Dallas, Texas, the equip-ment having operated without incident between Denver and that point; that said equipment had been recently purchased by one Buford Carter who leased it to the defendant; that prior to the trip, the tractor was test-driven for about 150 miles and appeared to be in service-able condition; and that the equipment was checked at defendant's terminal by the manager thereof who made a "standard check we make of all leased equipment" as prescribed by the Interstate Commerce Commission. The witness Sines, terminal manager of defendant, testified that from these inspections the equipment was in "road-worthy" condition. He was also informed by a mechanic who purported to know of the condition of the tractor because of his employment by the former owner, that it would meet all requirements of any truck line.

Defendant did not inform plaintiff concerning the breakdown and the delay occasioned thereby until the morning of March 4th. Delivery was tendered as soon as possible following the breakdown of the equipment. At the close of the evidence the trial court entered findings which included the following:

" * * * that the equipment used for the particular trip herein at issue was second-hand equipment recently pur-chased, and leased to defendant a few days prior to February 28th, 1958; that the inspection given to the equipment consisted of relying on representations made by the seller of the equipment to the lessor, and a cur-sory inspection which consumed 10 or 15 minutes of a dispatcher's time; that said equipment due to a loss of water broke down at Wells Point, Texas, and, as a result, the shipment could not be tendered by the carrier for delivery until approximately 48 hours after the normal time such a trip usually takes; that the shipment was refused by the consignee because of this delay; that the evidence before the Court disclosed an actual loss to the plaintiff as a result in the amount of $2,543.47; that the

defendant was negligent and such negligence was two-fold: first, that defendant had a duty to thoroughly examine the equipment prior to using it for the first time on such a trip in transporting such merchandise; second, that it was the duty of the defendant, or its agents, to promptly notify plaintiff of such breakdown of the equipment so that plaintiff might further mitigate his damage, if possible. The defendant failed in both instances, and its negligence in so failing was the proximate cause of plaintiff's damage.

"It is, therefore, ordered, adjudged and decreed that plaintiff have judgment against the defendant herein for the sum of $2,543.47, with interest at the legal rate from the date of filing this complaint, together with his court costs. * * * "

■ We need not discuss the question of whether the trial court was correct in finding that the evidence was sufficient to show negligence on the part of defendant. An erroneous reason is not grounds for the setting aside of a correct judgment, and the question which we must determine is:

*Was the trial court correct in rendering judgment against the defendant in view of all the evidence presented in the trial?*

The answer is in the affirmative. Admittedly there was an unexpected delay of the shipment which was scheduled for delivery on March 3rd, 1958, at 7:00 A.M. A companion shipment of beef which left Denver at the same time was in fact delivered on schedule. True it is, that a carrier is not an insurer against delay, and ordinarily is bound to use only reasonable diligence to transport and deliver shipments. 13 C.J.S. pp. 390 and 391, section 191.

■ In an early case decided by this court it was held that where damage is shown to have resulted by reason of undue delay by a carrier, the burden is on the carrier to show that the delay occurred without fault on its part. *Estes, et al. v. The Denver & Rio Grande Railroad Com-*

*pany,* 49 Colo. 378, 113 Pac. 1005. In that case we find the following language:

"(1) There was testimony to prove injury to the stock because of unnecessary delay, which resulted in an unnatural shrinkage in weight; and (2), where it appears the carrier was guilty of unnecessary delay in transporting cattle, and that they were materially damaged, the shipper makes a *prima facie* case. (Citing cases.)

*"The burden, then, rested upon the carrier to show that the injuries for which damages were claimed resulted either from an act for which it was not responsible, or a cause from which it had legally exempted itself by special contract."* (Emphasis supplied.)

■ Defendant directs our attention to *McKinley v. D. & R. G. W. Co.,* 119 Colo. 203, 201 P. (2d) 905, as authority for the proposition that where the shipper has alleged negligence as the cause of a delay in transit, the burden is upon the shipper to prove that negligence. A careful reading of that case, however, shows that there the plaintiff had pleaded *specific negligence,* and this court held that having alleged such negligence the burden was on the shipper to prove the same. The court there observed:

" * * * However, when plaintiff pleads specific acts of negligence of the defendant carrier he is required to establish the negligence so specifically charged. 'Where it appears only that goods were delivered to a carrier in good condition and that the carrier delivered them to the consignee in damaged condition, the shipper has made out a prima facie case of negligence against the carrier who must then prove the exercise by it of proper care. But where the shipper alleges specific acts of negligence, the burden of proving such acts is upon him.' *Atlantic Coast Line R. Co. v. Georgia Packing Co.,* 164 F. (2d) 1. * * * "

■■ In the case at bar we have only the flat allegation, "That due to said delay, occasioned by defendant's failure to use reasonable dispatch, consignee refused the

property, * * *." The above was not an allegation of specific negligence, and the failure of defendant to deliver with dispatch was established. The testimony offered by defendant falls short of proof that there was no negligence on its part. The cause of the breakdown of the cooling system is left to conjecture. Although repairs were made no evidence was offered from those who made them. The difficulty might well have been caused by corrosion, rust, deterioration of hoses, pipes or other parts of the equipment which generally would have been apparent to one competent to make the "checks" assertedly made. There is no evidence of latent or patent defects which might, or might not, have been detected by a proper inspection of the equipment.

Numerous cases from other jurisdictions support the contention of plaintiff that in situations comparable to that presented here, the burden of showing lack of negligence is upon the carrier. A leading case on the subject is that of *Leo Lococo's Sons v. Louisville and National Railroad Co.*, 259 Ky. 299, 82 S.W. (2d) 332, from which we quote the following:

"* * * As to what is reasonable dispatch depends in a measure upon the character of the commodity as perishable goods and livestock demand greater expedition than nonperishable and inanimate freight. * * * Only negligence will render the carrier liable for unusual delay and its consequences, unless there is a valid contract for delivery within a specified time. When a litigant presents this proof and shows that his shipment was materially delayed beyond the usual time, together with evidence of proximate loss, he makes out a prima facie case. It then devolves on the carrier to explain and to show that the delay was not due to negligence on its part, but arose from some other cause. This burden is placed upon the carrier because the facts are peculiarly within its knowledge and are ordinarily unavailable to the shipper. (Citing many authorities.)

"* * * The fact of inspection of machinery does not

negative negligence, for it may have been superficial, inefficient or insufficient to detect defects. * * *"

■ Another question requiring consideration relates to defendant's objection to the allowance of interest from the date the complaint was filed in the trial court. The statutory authority for granting of interest from the date of filing a complaint in cases where damages are claimed, based upon the negligence of the defendant, is C.R.S. 1953, 41-2-1. This section relates exclusively to "actions brought to recover damages for personal injuries" and is not applicable to the instant case.

C.R.S. '53, 73-1-2, authorizes interest at the legal rate on the amount of the judgment from and after the entry thereof. The trial court erred in awarding interest from the date of filing the complaint.

The judgment is reversed as to the excessive amount of interest, and the cause remanded with directions to deduct from the amount of the judgment interest from the date of filing the complaint to the date of entry of judgment. In all other respects the judgment is affirmed.

MR. JUSTICE KNAUSS and MR. JUSTICE DOYLE concur.