No. 20,387.

PUBLIC EMPLOYEES' RETIREMENT ASSOCIATION OF COLORADO, AND COLORADO STATE EMPLOYEE'S CREDIT UNION *v.* EDWARD JOHNSON.
(385 P. [2d] 415)

Decided September 30, 1963.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. RICHARD W. BANGERT, Assistant, for plaintiff in error Public Employees' Retirement Association of Colorado.

Mr. JACK E. KENNEDY, for plaintiff in error Colorado State Employee's Credit Union.

Mr. RICHARD M. KRANZLER, Mr. JACK I. SCHEIMAN, for defendant in error.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

WE will refer to the plaintiff in error Public Employees' Retirement Association of Colorado as the "Association"; to the other plaintiff in error as "Credit Union," and to the defendant in error as "Johnson." The parties appeared in reverse order in the trial court where Johnson brought suit to recover monies paid by him into the Association pursuant to the statute which provides for the retirement of state employees.

The facts were stipulated. Johnson was employed by the State of Colorado from April, 1955, until he resigned on May 2, 1961. Through payroll deductions there was paid into the Association fund during this period the amounts required by statute as employee's share in the retirement plan, and there had been accumulated to Johnson's credit the sum of $1,211.78. Through a series of transactions Johnson borrowed from the Credit Union the sum of $1,659.00, the last item having been $150.00 borrowed the day before his resignation. On the same day he signed and delivered to the Association an agreement appointing the Credit Union his "attorney-in-fact." This "appointment" was apparently substituted for similar documents signed at the time of the prior borrowing transactions because the agreed statement of facts recites

that "In accordance with procedure adopted by the Credit Union, Johnson was required as a condition of his loan to sign the document." It reads as follows:

"So long as this note remains unpaid, I hereby appoint and constitute The Colorado State Employees Credit Union to be my attorney-in-fact *and in case I should cease to be employed by the State of Colorado to demand and receive any moneys or credits payable to me* from the State of Colorado, or from *any bank, employees retirement fund,* or other depository or trustee with power to act as such, as fully and effectually as I might or could do in my own proper person if personally present, and hereby ratify all that my said attorney-in-fact shall lawfully do or cause to be done hereunder." (Italics supplied.)

On May 2, 1961, Johnson terminated his public employment. Then ensued the following chronology of events: Johnson made formal demand upon the Association for refund of the monies deposited to his credit in the fund; on the same day the Credit Union filed the "power of attorney" signed by Johnson with the Association; on May 9th Johnson executed a revocation of the "power of attorney," and this was stamped "received" by the Credit Union, the following day, May 10th; on May 11th Johnson made a formal request to the Association that his retirement funds be retained by the Association on deposit for later payment as a deferred annuity; on the same day the Association paid over the funds to the Credit Union; on the same date the Credit Union credited Johnson's loan account in an identical amount and carried forward a loan balance of $447.22. On August 24, 1961, Johnson filed with the Association a request to cancel his application for a deferred annuity and demanded cash payment of the full amount of his retirement account. When this demand was refused by the Association he commenced suit in the county court in Denver.

Trial on the agreed statement resulted in entry of a

judgment in favor of Johnson and against both the Credit Union and the Association in the amount claimed, and to this judgment the writ of error is directed.

The trial court found that the document purporting to appoint the Credit Union as "attorney-in-fact" was an equitable assignment coupled with an interest and void as in violation of C.R.S. '53, 111-1-20, which provides:

*"Funds not subject to process.* — None of the moneys, annuities or other benefits mentioned in this article shall be assigned either in law or equity or be subject to execution, levy, attachment, garnishment or other legal process, and shall be exempt from any state income tax."

This reasoning of the trial court is assigned as error. Under the cases setting forth the necessary requisites of an equitable assignment, we agree that the document referred to is not such an assignment. This, however, avails the Credit Union nothing. Notwithstanding the reason assigned by the trial court was erroneous, the judgment is correct. The payment by the Association of the fund to the Credit Union, the acquisition of the money and its use by the Credit Union to reduce the indebtedness of Johnson to it are contrary to law and void. The judgment of the trial court being correct although on an erroneous ground, will nevertheless be affirmed. *Denver Transport v. Galligan,* 145 Colo. 71, 358 P. (2d) 28; *Lawyers Corp. v. Frieder,* 147 Colo. 44, 362 P. (2d) 555.

If as contended by the Credit Union the document signed by Johnson did not assign or transfer any interest in the fund to the Credit Union, then the appointment of it as an agent to demand and receive the moneys and credits was revocable. 2 Am. Jur. (Agency) 65, § 80. Any other construction would brand the instrument as being in plain violation of 111-1-20 and void. The power does not assign the interest in the fund, does not purport to be security by any words used, and does not give the Credit Union any authority except to demand and re-

ceive the money as could Johnson in his own proper person.

Under the agreed chronology of facts, the Association was served on May 4, 1961, with a written demand in which Johnson asks for a refund "pursuant to law" of "the full amount of the accumulated deductions standing to the credit of his individual account." The hour of the receipt of this demand is not noted on the receipt stamp of the Public Employees' Retirement Association. The stipulation states that the "power of attorney" was received by the Association on the same day although there was no receipt stamp or notation of any kind showing that the power was filed in the Association office. The stipulation does not reveal which came into the office first, but it would make no difference. If Johnson's personal demand for the funds came in first, the Association was on notice that the authority of the Credit Union to receive the funds had been withdrawn. If the power of attorney came in first, the demand by Johnson for the full amount of the fund to be paid directly to him would supersede the power of attorney and put the Association on notice of the revocation of the power. All of this took place before any money had been paid out by the Association, and disbursement of the fund can only be made upon approval of the Retirement Board and a finding by the Board that the disbursement was "for the purpose of * * * refundment to a member." C.R.S. '53, 111-1-4. The stipulation also shows that in apt time and before the Association actually paid out any moneys another election was filed by the employee, altering his demand for refund and electing to take one of the options which provides for the money to be retained on deposit for later payment as a deferred annuity. This document also constitutes notice to the Association that the power of attorney was no longer valid.

In addition to the notice to the Association, Johnson executed a written revocation of the appointment of the Credit Union as his "attorney-in-fact" and filed the revo-

cation in its office a full day in advance of receipt of the funds from the Association. The money thus came into the hands of the Credit Union at a time when it had no authority to receive the same. Receiving the money and failing to turn it back to the Association, the Credit Union holds it in trust for return to Johnson.

■ We hold under C.R.S. '53, 111-1-9 (1) when any member of the Association shall cease to be a state employee for any reason he shall be paid *on demand* the full amount of the accumulated deductions standing to the credit of his individual account. Such demand was made in apt time here.

The judgment is affirmed.

MR. JUSTICE HALL and MR. JUSTICE PRINGLE specially concur.

MR. JUSTICE HALL specially concurring:

The trial judge found:

"The Court finds that Exhibit C, the so-called power of attorney, is coupled with an interest and therefore is irrevocable.

"The Court further finds that as an irrevocable instrument it has created an equitable assignment and as such is contrary to the statute covering the Public Employees Retirement Association Act.

"For the reasons stated, Exhibit C is void and of no effect, and is a document upon which the Association should not have paid funds of the plaintiff, nor should it have recognized Exhibit C.

"Accordingly, the Court finds for the plaintiff and against the defendants and each of them, and gives judgment in behalf of the plaintiff and against the defendants and each of them, in the amount of $1,211.78 and costs."

The majority opinion, contrary to the foregoing, holds that this so-called power of attorney is a power of attorney and nothing more. I disagree with this holding.

In determining the nature and effect of the document we should not shut our eyes to surrounding facts and the ends sought by the parties.

The Credit Union is not engaged in the business of serving as attorney in fact for others; it is engaged in making loans and, in so doing, taking precautions to see that recovery be had of the monies loaned.

The power was executed in connection with making a loan, creation of a debtor-creditor relationship. The power remains in force "so long as *this note* remains unpaid." What can be meant by *"this note"* other than a note taken for a loan made at the time of the execution of the power and all as one transaction. Clearly the power of attorney was demanded and given to the end that on Johnson terminating his employment, he then being a less desirable risk because unemployed, the Credit Union, armed with this power of attorney, could demand and receive from the Association funds credited to Johnson's account with the Association.

Johnson, on May 4th, on a printed form supplied by the Association, made his "demand for refund." He did not get his money. Why? Presumably because of the strange coincidence that the Credit Union, on that very same day, filed with the Association its power of attorney. Strangely, the record does not disclose which document was first received by the Association.

Johnson, on May 11th, on a printed form supplied by the Association, notified the Association that he wished to apply for a deferred annuity. By another strange coincidence, on that very same day, the Association, acting no doubt pursuant to one of these so-called powers of attorney, paid to the Credit Union all of Johnson's funds. Here, again, the record is strangely silent as to whether the payment was made before or after receipt by the Association of Johnson's application for a deferred annuity.

On May 11th, the Credit Union demanded and received from the Association the amount credited to Johnson's account. Did the Credit Union, as a mere attorney

in fact, turn the money over to Johnson? No! It pocketed the money and credited the amount on Johnson's indebtedness. Through the cooperative efforts of all of the parties to this action, the end result was to achieve that which the statute says shall not come to pass.

The Credit Union is in an unenviable position. If it contends that it did have an interest in Johnson's money, it runs afoul of C.R.S. '53, 111-1-20; on the other hand, if it contends that it had no interest in Johnson's money, then it is chargeable with the unlawful conversion and appropriation thereof to its own use.

Inescapably, Johnson, the Credit Union and the Association, through their devious means, succeeded in accomplishing that which the legislature sought to prevent.

As I interpret the majority opinion, the procedures followed by the parties here are approved. Had there been no revocation of the power of attorney, Johnson's retirement funds would be gone and he would be without recourse.

In my opinion the procedures followed are designed to (and in this case did) circumvent the plain language of the statute and should be pronounced void.