George **CONDAKES**, d/b/a Peter Condakes Company, Plaintiff,

v.

**SOUTHERN PACIFIC COMPANY**, Defendant.

Civ. A. No. 67–965–J, 67–966–J.

United States District Court
D. Massachusetts.

Nov. 27, 1968.

As Amended Feb. 3, 1969.

Frank Infelise, Jr., Lynn, Mass., for plaintiff.

George B. Redding, Earl F. Nauss, Jr., Boston, Mass., for defendant.

## OPINION

JULIAN, District Judge.

Plaintiff brought these two actions under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 20(11), to recover damages allegedly caused by defendant carrier's late delivery at Boston of two carload shipments of lettuce from Salinas, California.

## FINDINGS OF FACT

Plaintiff, George Condakes (hereinafter "Condakes"), does business in Boston, Massachusetts, as Peter Condakes Company. The defendant, Southern Pacific Company (hereinafter "Southern Pacific"), is a railroad corporation engaged in interstate commerce.

On May 20, 1964, at 5:12 p. m. Pacific Standard Time, Southern Pacific received two carload shipments of lettuce at Salinas, California, from Condakes' consignor, The Garin Company. At that time Southern Pacific issued two uniform straight bills of lading covering the railroad cars in question (PFE–47292 and PFE–301741). Both bills of lading specified that the cars were to be delivered to Condakes as consignee at Boston and prescribed the connecting carriers over whose lines the cars were to travel en route. The itineraries to Blue Island [Chicago], Illinois, were not entirely identical, but they were identical from Blue Island to destination.

From Salinas the two cars traveled via Southern Pacific and connecting lines to Blue Island, Illinois, PFE–47292 arriving there at 5:40 a. m. Central Stand-

ard Time on May 25, 1964, three hours and 35 minutes ahead of schedule, and PFE–301741 arriving there at 7:45 a. m. Central Standard Time, or one and one-half hours ahead of schedule. At 10:40 a. m. Central Standard Time on the same day, they departed from Blue Island for Boston on the New York Central line, twenty minutes ahead of schedule.

Scheduled running time from Blue Island to the Beacon Park yards in the Allston section of Boston was 35½ hours, which would have meant that the lettuce in the cars would have been available for sale on the Boston market on May 27, 1964.

Instead of the scheduled 35½ hours, however, the cars actually took 52 hours and five minutes to complete the run from Blue Island, thus arriving at Beacon Park at 3:45 p. m. Eastern Standard Time on May 27, 1964—a full 16¼ hours behind schedule and too late for the market of the 27th.[1] Because there was ample time to do so, the cars were then re-routed to an alternative marketing outlet in Boston to which they were moved without subsequent delay in time for sale on the following day's market. The market, however, had declined, and both carloads of lettuce sold at a reduced price.

The parties have stipulated and I find that, if plaintiff prevails, he is entitled to recover $372.51 in Civil Action No. 67–965–J, and $391.65 in Civil Action No. 67–966–J, in each case without interest and costs.

Defendant Southern Pacific presented no evidence tending to explain or otherwise to justify the departure of 16¼ hours from the scheduled 35½ hour running time between Blue Island and Beacon Park.[2] I find that the delay was

---

1. In fact, the cars took more than 16½ hours beyond the scheduled time between Blue Island and Beacon Park. The Court, however, has given the defendant carrier the benefit of the twenty minute headstart leaving Blue Island.

2. I place no reliance whatever upon the testimony of the witness Leary, Chief Clerk of the Penn-Central Freight Office

at Boston, who testified for defendant concerning a statistical summary (Exh. A) which purported to show the actual and average running times for railroad cars traveling from California to Boston during the period May through August 1964.

In addition to there being no showing as to the nature and reliability of the un-

material, unnecessary, unreasonable and unjustified under the circumstances.

The bills of lading contained the following provision:

"Sec. 2. (a) No carrier is bound to transport said property by any particular train or vessel or in time for any particular market or otherwise than with reasonable dispatch."

I find that the New York Central without excuse or justification failed to transport the two shipments of perishable produce in these cases with reasonable dispatch and that as a result thereof the plaintiff in each case sustained the stipulated amount of damage.

### CONCLUSIONS OF LAW

■ Southern Pacific is attempting in this case to litigate questions that were laid to rest forty years ago. By the terms of the bill of lading Southern Pacific undertook to transport the two cars in question "with reasonable dispatch." The duty to transport goods with reasonable dispatch is "an integral part of the normal undertaking of the carrier." New York, Philadelphia & Norfolk R. R. Co. v. Peninsula Produce Exchange, 1916, 240 U.S. 34, 38–39, 36 S.Ct. 230, 232, 60 L.Ed. 511. A party injured by the carrier's breach of that duty is entitled to recover damages not only under the well-settled common law rule,[3] but also under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 20(11).[4]

■ Southern Pacific argued at trial that, in determining whether an unreasonable delay occurred in these two cases, the Court should look not to the Blue Island-to-Beacon Park segment but rath-

derlying documents upon which his statistics were based, there was no evidence to show the competence of the person who compiled the summary. The shipments covered by Exhibit A were not shown to be comparable to the two shipments in this case, and the figures in Exhibit A are misleading for the following reasons:

(a) Ninety-nine of the 160 shipments mentioned in Exhibit A originated in one of 38 California cities other than Salinas, yet the Exhibit in no way indicates how this fact affected the cars' total travel time to Boston;

(b) Exhibit A does not indicate which, if any, of the shipments mentioned therein traveled the same route as did the two cars in this case, even though different routes require different periods of time;

(c) All of the 160 shipments mentioned in Exhibit A terminated not at Beacon Park but rather at the Kneeland Street yards in Boston; Kneeland Street is located beyond Beacon Park and takes several hours longer to reach;

(d) Exhibit A wholly ignores all cars which, like those in this case, were originally destined for Kneeland Street but were, upon delayed arrival at Beacon Park, diverted to Boston Market Terminal; more importantly, the evidence at trial indicated that the majority of shipments of produce arriving at Boston are originally routed for Boston Market Terminal, yet *none* of these shipments are mentioned in Exhibit A;

(e) Exhibit A does not indicate whether any of the shipments mentioned therein were stopped or diverted en route at the consignee's request, thus lengthening running time;

(f) For each shipment mentioned in Exhibit A the date but not the time of departure is given; thus in each instance the transit time indicated is inexact by a period of time ranging up to 24 hours; and

(g) There is no evidence to show whether the listed shipments themselves were transported with reasonable dispatch.

3. Lamb v. Railway Express Agency, 1958, 51 Wash.2d 616, 320 P.2d 644; Lococo's Sons v. Louisville & N. R. Co., 1935, 259 Ky. 299, 82 S.W.2d 332; Pusater v. New York, C. & St. L. R. Co., 1927, Sup.Ct.Spec. Term, 129 Misc. 24, 220 N.Y.S. 438; Wallace-Farmer v. Davis, 1924, Iowa, 199 N.W. 307; Payne v. Mallory, 1921, 148 Ark. 431, 230 S.W. 270; National Elevator Co. v. Great Northern R. Co., 1919, 141 Minn. 407, 170 N.W. 515.

4. Southeastern Express Co. v. Pastime Amusement Co., 1936, 299 U.S. 28, 29, 57 S.Ct. 73, 81 L.Ed. 20; New York & Norfolk R. R. Co. v. Peninsula Exchange, supra; cf. Great Atl. & P. Tea Co. v. Atchison, Topeka and Santa Fe Railway Company, 1964, 7 Cir., 333 F.2d 705, 710.

er to the time required for the entire trip as a whole. In short, defendant would have the Court spread its delay back over the preceding 2,000 miles. This is not the rule. As the Supreme Court said in 1916, the language of the Carmack Amendment is

"comprehensive enough to embrace all damages resulting from any failure to discharge a carrier's duty with respect to *any part of the transportation* to the agreed destination." (Emphasis added)

New York, Philadelphia & Norfolk R. R. Co. v. Peninsula Produce Exchange, 1916, 240 U.S. 34, 38, 36 S.Ct. 230, 60 L.Ed. 511; see Pusater v. New York, C. & St. L. R. Co., supra, note 3.

■ The defendant also argues that the best evidence of what constitutes reasonable dispatch is not the railroad schedule but rather the time usually required for comparable shipments between the same points. For the reasons indicated in note 2, supra, the Court is not persuaded by defendant's purported evidence (Exh. A) as to the normal time required for allegedly comparable shipments. In the absence of persuasive evidence to the contrary, the railroads' own schedules are sufficient evidence of what length of time constitutes reasonable dispatch. St. Louis-San Francisco Ry. Co. v. J. W. Myers Commission Co., 1945, 208 Ark. 1032, 185 S.W.2d 288; Lococo's Sons v. Louisville & N. R. Co., supra, note 3; Janesville Live Stock & Shipping Co. v. Hines, 1920, 146 Minn. 260, 178 N.W. 739; see Railway Express Agency v. Smith, 1953, E.D.S.C., 116 F. Supp. 609.

The defendant argues that the practical result of using schedules as evidence of what constitutes reasonable dispatch is to make the carrier liable for any unjustified departure from schedule which renders a shipment unavailable for a market which the shipment would have reached had it arrived on schedule. This result, contends the defendant, contra-

venes the clear language of the bill of lading that the carrier is not bound to transport the shipment "in time for any particular market."

This argument was dismissed by the Supreme Court fifty-two years ago in New York, Philadelphia & Norfolk R. R. Co. v. Peninsula Produce Exchange, supra:

"[T]he reference to the market said to have been lost [is] merely for the purpose of calculating damages which were sought solely because of lack of reasonable diligence and not upon the allegation of any added duty with respect to a particular train or market." 240 U.S. at 41, 36 S.Ct. at 233.

Accord, Railway Express Agency v. Smith, 1953, E.D.S.C., 116 F.Supp. 609; Lamb v. Railway Express Agency, 1958, 51 Wash.2d 616, 320 P.2d 644.

■ By showing that the two cars in this case took 52 hours and five minutes, or 16¼ hours longer than the scheduled 35½ hours to travel from Blue Island to Beacon Park, plaintiff established a prima facie case that defendant breached its duty to transport the cars with reasonable dispatch.

■ Under the well-settled rule, the burden then shifted to the defendant to come forward with evidence tending to show that the delay was justified or reasonable under the circumstances. Seaboard Air Line R. Co. v. Lake Region Packing Assn., 1968, Dist.Ct.App.Fla., 211 So.2d 25; Denver-Albuquerque Motor Transp., Inc. v. Galligan, 1960, 145 Colo. 71, 358 P.2d 28; Lamb v. Railway Express Agency, 1958, 51 Wash.2d 616, 320 P.2d 644; Lococo's Sons v. Louisville & N. R. Co., 1935, 259 Ky. 299, 82 S.W.2d 322; Pusater v. New York, C. & St. L. R. Co., 1927, Sup.Ct.Spec.Term, 129 Misc. 24, 220 N.Y.S. 438; Payne v. Mallory, 1921, 148 Ark. 431, 230 S.W. 270; National Elevator Co. v. Great Northern R. Co., 1919, 141 Minn. 407, 170 N.W. 515. The defendant has presented no such evidence.[5]

5. In contrast, see Zizzo v. Railway Express Agency, 1955, D.Mass., 131 F.Supp. 326 [late delivery of shipment of fresh fish justifiable in view of severe snow-

The fact that the unreasonable delay in these two cases occurred while the goods were being transported by a connecting line, namely, the New York Central, does not absolve the defendant from liability under the Act. New York, Philadelphia & Norfolk R. R. Co. v. Peninsula Produce Exchange, 1916, 240 U.S. 34, 36 S.Ct. 230, 60 L.Ed. 511.

Accordingly, judgment will be entered for plaintiff in both cases, in the amounts of $372.51 and $391.65, respectively, without interest and without costs.

storms and cold]; Condakes v. Southern Pacific Co., 295 F.Supp. 119 (D.Mass., November 5, 1968) [delay in switching carload of peaches from Beacon Park to Boston Market Terminal held reasonable where switching yards were filled to capacity with other cars]; see also Southern Pacific Co. v. H. Rothstein & Sons, 1957, Tex.Civ.App., 304 S.W.2d 383, 385 [delay in shipping lettuce to Philadelphia from California which was caused by railroad strike in Mid-west would have been sufficient justification to relieve carrier from liability for late delivery, but railroad, having advance notice of the strike, failed to advise shipper; held, liable].