DAWKINS, J.
Plaintiff seeks to recover of the defendant the sum of $4,000 as the alleged value of a “mat” or network of plank which it had constructed for the Gulf Refining Company at Lenzberg, La., to be used in revetment work for preserving the bank of Red river at that point, and which mat was washed away and-lost in a sudden rise or freshet in said river. The petition charges that plaintiff had constructed some 423 feet of this mat, consisting of planks woven together somewhat like a basket, which it proposed to sink against the side of the bed or bank of the river by the use of coarse stone, which it had ordered from the quarry near Minden, La., on the line of the defendant company, and consisting of some five cars; that, notwithstanding the fact the said stone arrived at Lenzberg in ample time to have been used for the purpose stated, the agents and employés of the defendant failed and refused to deliver the same at a point on the switch track where it could be unloaded and used for sinking the mat until after the latter had been destroyed in the manner alleged, although plaintiff had promptly demanded the stone be so placed upon the arrival of each and every car, and had informed the defendant’s agent at said point of the apprehended danger and the necessity for prompt action.
Defendant admits the arrival at Lenzberg of the five cars of stone as alleged, but avers that there was no legal obligation on its part to deliver the same at any particular point; that the cars were delivered on the said switch track at a point where the plaintiff could have, with reasonable convenience, unloaded them, if it had seen fit to do so; that it was impracticable to deliver the stone at the extreme end of the track, as contended by plaintiff, because of intervening cars and shipments to and from other customers on the same track; and that in any event, it is not liable for the alleged damage, because the same was not due to any fault on its part, but that if any loss was suffered it was caused by an intervening independent agency over which it had no control, to wit, meteorological disturbances, which produced the rise in the river. It further denied that the loss was as large as claimed.
Defendant also filed an exception of no cause of action, which was overruled, but it has not answered the appeal, and that plea is not now before us.
A trial on the merits resulted in a judgment in favor of defendant, and plaintiff has appealed.
We think that the plaintiff has proven the essential facts alleged in its petition, to wit:
That the five cars of stone were shipped and reached Lenzberg on the dates charged, and that the defendant failed to deliver them at a point reasonably accessible for unloading until after the mat had been washed away and lost, although the record is not altogether clear as to its value. We think it is also shown that no notice was given to defendant before or at the time of shipping that the stone was to be used for any specific purpose, or that there was any extraordinary need for rushing it to destination, and that a failure to do so would likely cause *463 the damage claimed.' However, it is proven that upon the arrival of the first car on the 2d of April, plaintiff’s representative did call upon the defendant’s agent at Lenzberg and request that the shipment be placed, informing him of the purpose for which it was intended and of the possibility of the river rising and destroying the mat. Telegrams and communications passed between the agent and general officers of the defendant looking to a proper placing of the ears, but for reasons not altogether clear this was not done until the 27th of April, after the mat had been washed away by the sudden rise in the river early that morning.
The case, therefore, presents two important questions of law.
First. Granting that it was necessary, at the time of entering into the contract of carriage for the defendant to have been informed of the possibility of special damage to accrue from failure to promptly deliver the shipment, in order to render it liable therefor, did the fact that it was so informed promptly on the arrival of the shipment at Lenzberg, and its subsequent negligent failure to seasonably deliver the stone, as requested, render it liable for special damages resulting therefrom?
Second. Under the circumstances just recited, was the rise in the river such an indedependent intervening cause of the damage as to relieve defendant, from liability therefor?
[1] Taking up the first question, we think it may be conceded that the damage was not such as reasonably entered into the contemplation of the parties at the time of making the contract of carriage, as required by articles 1930, 1933, and 1934, R. C. C. Defendant cannot be held to have foreseen that heavy rains would fall, and that the river would suddenly rise, as subsequently happened. This was not a result which could reasonably have been expected to flow from a failure to promptly deliver the shipment. To render defendant liable for special damages for' delay in transportation, it was necessary that it should have been given notice, before or at the time of entering into the contract to carry, of the circumstances which might cause such special damage, in order that it might have an opportunity to guard against the same. Elliott on Railroads (2d Ed.) vol. 4, p. 827, § 1731; R. C. L. vol. 4, pp. 744-746; Corpus Juris, vol. 10, p. 316 et seq. (Carriers) § 458, and authorities cited.
[2] However, the complaint here is not that the delay occurred in transportation between the points of shipment and destination, but in the delivery after the cars reached Lenzberg. It is not contended by plaintiffs that the cars of stone did not reach the latter place seasonably, but that after arrival, defendant failed and refused, after actual and prompt notice of the circumstances under which the damage was likely to occur, to deliver the shipment at the usual and proper place for the plaintiff to unload, until after the loss had occurred. Under such circumstances, the reason for the rule requiring prior notice in the carrier before receiving the shipment, i. e., to enable it to guard against the danger, no longer existed; and it was then and there put on notice of the consequences of its willful or negligent refusal to comply with the lawful and reasonable demands of the shipper.
“Where the breach consists in the failure to make delivery after the shipment reaches its destination, and when nothing remains to be done by the carrier except to make delivery, the carrier is responsible for such special damages as it was then informed would likely result from its negligence in that regard. Under these circumstances, the reason for the rule ceases. Corpus Juris, vol. 10, p. 318 (Carriers) § 459; Chicago, etc., R. R. v. King, 104 Ark. 215, 148 S. W. 1035; Bourland v. Choctaw, etc., R. Co., 99 Tex. 407, 90 S. W. 483, 3 L. R. A. (N. S.) 1111, 122 Am. St. Rep. 647; Texarkana, etc., R. Co. v. Neches Iron Works, 57 Tex. Civ. App. 249, 122 S. W. 64.”
*465 We therefore think that if such failure or refusal to deliver was the proximate cause of the loss, plaintiff should recover.
[3] As to the second question, as to whether or not such negligence was the proximate cause of the damages we find that the thing which actually destroyed the mat was the sudden rise in the river, and as to which no .causal connection with the failure to deliver the stone did or could exist. The case does not fall within even that class on which the courts of this country are badly divided • — that is, where goods are damaged in transit by acts of God, and but for the negligent delay of the carrier they would have been safely delivered before such acts happened (R. C. L. vol. 4, p. 720, et seq. §§ 192, 194), for coneededly the damage in the present case was not to the stone. But the suit is for damages to other property which the stone was intended to preserve, and it did not follow, as a natural and reasonable consequence, that the act of God would destroy the mat because of the delay in delivery of the stone. The defendant had no duty to perform in regard to the mat, contractual or otherwise. R. C. L. vol. 4, p. 744, § 218 (Carriers) ; Williams v. Atlantic Coast Line Ry. Co., 56 Fla. 735, 48 South. 209, 24 L. R. A. (N. S.) 134, 133 Am. St. Rep. 169. There is no charge of fraud or bad faith.
For the reasons assigned, the judgment appealed from is affirmed at the cost of the appellant.
PROYOSTY, J., concurs in decree.