**TURNER'S FARMS, INC., Plaintiff,**

v.

**MAINE CENTRAL RAILROAD COMPANY, Defendant.**

**Civ. No. 78-71 P.**

United States District Court, D. Maine.

March 14, 1980.

---

**15.** 42 U.S.C. § 405(g). *See Bastien v. Califano,* 572 F.2d 908, 913 (2d Cir. 1978). *Cf. Eiden v. Secretary, HEW,* 615 F.2d 63 (2d Cir. 1980).

George S. Isaacson, Lewiston, Me., for plaintiff.

Ralph I. Lancaster, Jr., Everett P. Ingalls, Portland, Me., for defendant.

## OPINION AND ORDER OF THE COURT

GIGNOUX, Chief Judge.

This is an action under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 20(11).[1] Plaintiff alleges that the defendant railroad delayed delivery of two carloads of poultry feed and one

1. The Carmack Amendment was recodified without substantive change at 49 U.S.C. § 11707 on October 17, 1978. P.L. 95–473; 92 Stat. 1337, 1453 (1978).

carload of "concentrate" to plaintiff's poultry farm in Livermore Falls, Maine. The complaint seeks damages for profits lost as a result of defendant's alleged delay in delivery. Defendant contends that the three carloads were delivered with "reasonable dispatch" and that, therefore, plaintiff has no claim for delayed delivery. Defendant further contends that the alleged lost profits are special damages not recoverable under the contract of carriage embodied in the bills of lading. The two issues thus presented have been submitted on the record before the Court on defendant's motion for summary judgment.

I

The material facts are largely undisputed. Plaintiff is in the business of producing and selling eggs. It requires a particular chicken feed mixture to maximize production and quality. Different elements of the mixture are delivered by rail to plaintiff's poultry farm in Livermore Falls, where they are combined at plaintiff's grain mill prior to being fed to the chickens.

On December 14, 1976, Ashland Landmark, Inc. of Ashland, Ohio, tendered for rail shipment two carloads of "bulk shelled corn" to the Erie Lackawanna Railway Company. The bill of lading listed Interstate Commodities of Troy, New York, as the consignee, but on December 17 Interstate Commodities diverted the two cars to plaintiff in Livermore Falls, before they reached Troy.

On December 17, 1976, Central Soya Company, Inc. tendered for rail shipment one carload of "bulk animal and poultry feed" (feed and vitamin concentrate) at Camp Hill, Pennsylvania, "consigned to the order of Central Soya Co., Livermore Falls, Maine, Notify Homer Simpson DBA Simpson Poultry Farm, c/o Turner Farms." Simpson Poultry Farm is an egg production farm like plaintiff to which plaintiff supplied feed mixed at its mill. Plaintiff routinely paid for and took delivery of shipments so addressed.

Plaintiff's president, John F. Newman, Jr., had ordered the feed on December 17 and was relying on the arrival of the three cars before the Christmas holiday weekend because plaintiff's supplies of feed were running low. On Thursday, December 23, Newman visited defendant's station master at Livermore Falls, Joseph P. Tenneson, Jr. Newman told Tenneson that he needed the carloads before the weekend and would have to make alternative arrangements if they did not arrive in time. Newman explained to Tenneson that without the feed the hens would not have enough to eat and would go off production, causing plaintiff a substantial loss. Tenneson checked to see where the cars were at that time and discovered that they were in Portland. Later that day he told Newman that the cars would arrive in Livermore Falls on the following morning, Friday, December 24.

The three cars arrived at defendant's Livermore Falls station at approximately 3:00 a. m. on December 24. At about 8:00 a. m. Tenneson notified Newman that the cars had arrived. At 10:30 a. m. Newman arrived at the station and surrendered to Tenneson the proper documents (the bill of lading on the Central Soya car and release orders on the Ashland Landmark cars) authorizing defendant to deliver the cars. Newman again told Tenneson that plaintiff had to have the feed and that if the cars could not be set at plaintiff's siding that day he would have to get the feed elsewhere. Tenneson told Newman that the cars would be set at plaintiff's siding that day, sometime soon after noon.

The three cars were not set at plaintiff's siding until the following Monday, December 27. Because of a mixup in orders to defendant's switching crew, neither of the two trains working in the area on December 24 received the order to set plaintiff's cars.[2] As a result, plaintiff and Simpson

---

[2.] The record discloses that the regular train had been cancelled. The conductor of the first backup train was instructed at about 8:00 a. m. not to set any cars at Livermore Falls. Tenne-son later left him a specific switching order to move plaintiff's cars. Although the order was put in the appropriate place, the register book kept at the station, the conductor did not look

Poultry Farms both ran out of the special feed over the weekend.

Plaintiff alleges that because the three cars were not delivered to its siding until Monday, December 27, five flocks of plaintiff's chickens and two flocks of chickens owned by Simpson Poultry Farm were removed from their feeding schedules, causing a drop in egg production. The damages claimed by plaintiff represent the loss of income allegedly resulting to plaintiff and to Simpson Poultry Farm from the diminished egg production caused by the delayed delivery of the feed cars.

## II

The two issues disputed by the parties in this case are: first, whether defendant failed to deliver the feed with "reasonable dispatch" as required by the bills of lading and, second, whether plaintiff may recover as special damages the lost profits it seeks. The Court will separately consider each of these questions.

## A.

Defendant contends that it is not liable for delayed delivery because the three carloads of feed were delivered with "reasonable dispatch." The Court must disagree. ■ The Carmack Amendment provides, in relevant part:

> Any . . . railroad . . . receiving property for transportation from a point in one State . . . to a point in another State . . . shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it . . . . .

Although a literal reading of the statutory language suggests that the Carmack Amendment covers only cases in which the property transported is itself damaged or reduced in value, the Amendment applies to any cause of action arising by virtue of a breach of an interstate contract of carriage. *American Synthetic Rubber Corp. v. Louisville & Nashville Railroad*, 422 F.2d 462, 464–67 (6th Cir. 1970).

The parties agree that the contract of carriage is contained within the bills of lading. *Shippers Service Co. v. Norfolk & Western Railway*, 528 F.2d 56, 57 (7th Cir. 1976); *American Synthetic Rubber Corp. v. Louisville & Nashville Railroad, supra* at 467–68. The Uniform Bill of Lading covering the three shipments at issue in this case provided:

> Sec. 2. (a) No carrier is bound to transport said property by any particular train or vessel or in time for any particular market *or otherwise than with reasonable dispatch.* (Emphasis added)[3]

■ The duty to transport goods with reasonable dispatch is "an integral part of the normal undertaking of the carrier." *New York, Philadelphia & Norfolk Railroad v. Peninsula Produce Exchange*, 240 U.S. 34, 38–39, 36 S.Ct. 230, 232, 60 L.Ed. 511 (1916). A party injured by the carrier's breach of that duty is entitled to recover damages under the Carmack Amendment. *Southeastern Express Co. v. Pastime Amusement Co.*, 299 U.S. 28, 29, 57 S.Ct. 73, 74, 81 L.Ed. 20 (1936) (per curiam); *New York, Philadelphia & Norfolk Railroad v. Peninsula Produce Exchange, supra*, 240 U.S. at 39, 36 S.Ct. at 232; *Great Atlantic*

---

at the order because he assumed it was not for him. The second backup train did not carry out the order because it was addressed to the first train. Later that day, when Newman called to see why the cars had not been delivered, he could get no answer from the railroad because Tenneson and the dispatcher at Portland had gone home. Newman called other feed suppliers but was unable to get feed because of the holiday weekend.

Defendant does not deny that it was negligent in failing to make delivery of the cars on December 24. Indeed, defendant later disci-

plined the conductor of the first backup train for that failure.

3. The applicable tariff filed by defendant with, among other commissions, the Interstate Commerce Commission and the Maine Public Utilities Commission, provided:

> The carriers are not required to transport property by any particular train or vessel or in time for any particular market or otherwise than with reasonable dispatch. (See Section 2(a) of bill of lading condition).

& Pacific Tea Co. v. Atchison, Topeka & Santa Fe Railway, 333 F.2d 705, 707–08 (7th Cir. 1964), cert. denied, 379 U.S. 967, 85 S.Ct. 661, 13 L.Ed.2d 560 (1965).

Defendant argues that the carrier's duty to transport with reasonable dispatch relates to the time required for the entire journey. Defendant points out that it delivered the cars exactly ten days after the feed was ordered and shipped and that Newman acknowledged he expects shipments of grain to take between five and 15 days to reach Livermore Falls and he normally figures on ten days for delivery. Defendant contends, therefore, that the undisputed facts in this case establish that defendant met its contractual obligation to deliver the feed with reasonable dispatch.

■ Plaintiff does not dispute that defendant transported the goods with reasonable dispatch, considering the time required for the entire journey. Plaintiff argues, however, that, in determining whether an unreasonable delay occurred in this case, the Court should "look at the particular part of the transportation involved and not to the entire trip as a whole." The position is that, even if the transportation time for the entire journey is reasonable, a railroad may still fail to meet its carrier's duty if there is unreasonable delay on a particular segment of the journey. There was clearly such a delay in this case. The evidence demonstrates that railroad cars are invariably delivered from defendant's Livermore Falls station to plaintiff's siding on the same day that plaintiff delivers the bills of lading and requests delivery, absent a blockage of snow or similar problem. Moreover, plaintiff has affirmatively demonstrated that the delay was caused by defendant's negligence.

Neither the Court nor counsel have discovered any case directly on point. The two cases upon which plaintiff places principal reliance are distinguishable. In New York, Philadelphia & Norfolk Railroad v. Peninsula Produce Exchange, supra, 240 U.S. at 38, 36 S.Ct. at 232, the Supreme Court said in 1916 that the language of the Carmack Amendment is "comprehensive

enough to embrace all damages resulting from any failure to discharge a carrier's duty with respect to any part of the transportation to the agreed destination." (Emphasis added) The Court, however, was speaking to the liability of the initial or delivering carrier for delays by any connecting carrier, rather than delays in a part of the transportation by a particular carrier. In Condakes v. Southern Pacific Co., 295 F.Supp. 121 (D.Mass.1968), the court, citing the quoted language from Peninsula Produce, looked to a particular segment of the entire trip in determining that an unreasonable delay had occurred. Id. at 124. But in Condakes the overall transportation time exceeded the railroad's scheduled time. Id. at 122. In the instant case, defendant had no published schedule for the shipments in question.

■ Despite the absence of express authority, the Court is persuaded that on the facts of this case defendant failed to transport the three cars in question with reasonable dispatch. In determining whether the carrier has fulfilled its contractual duty to transport goods with reasonable dispatch, the courts must look to the particular circumstances in each case. As the Supreme Court said in Chesapeake & Ohio Railway v. Martin, 283 U.S. 209, 213, 51 S.Ct. 453, 455, 75 L.Ed. 983 (1931):

> What constitutes a reasonable time depends upon the circumstances of the particular case. As applied to a case like this, it means such time as is necessary conveniently to transport and make delivery of the shipment in the ordinary course of business, in the light of the circumstances and conditions surrounding the transaction.

In the present case, it is undisputed that there was a delay of three days in the delivery of the cars from defendant's Livermore Falls station to plaintiff's siding, an operation that normally required only a few hours. Tenneson notified Newman that the three cars had arrived at Livermore Falls and assured him that they would be delivered to plaintiff's siding on the same day. Newman relied on Tenneson's representa-

tion. *See Johnson v. New York, New Haven & Hartford Railroad,* 111 Me. 263, 267, 88 A. 988, 991–92 (1913). Moreover, defendant concedes that the delay was caused by its negligence. *See Seaboard Air Line Railroad v. Lake Region Packing Association,* 211 So.2d 25, 27–28 (Fla.App.1968). Considering all these circumstances, the Court holds that defendant breached its contractual duty to transport the shipment with reasonable dispatch as set forth in the bills of lading.

### B.

The only damages sought by plaintiff are for lost profits claimed to have resulted from the alleged delay in delivery of the three cars of feed grain and concentrate. Defendant contends that the alleged lost profits are special damages not recoverable under the contract of carriage embodied in the bills of lading. The Court disagrees.

■ It is not disputed that special damages are recoverable under the Carmack Amendment. *American Synthetic Rubber Corp. v. Louisville & Nashville Railroad, supra* at 467; *Whitlock Truck Service, Inc. v. Regal Drilling Co.,* 333 F.2d 488, 492 (10th Cir. 1964). Defendant argues that the Carmack Amendment does not alter the common-law rule as to special damages, derived from *Hadley v. Baxendale,* 9 Ex. 341, 354 (1854), that they are only recoverable to the extent that they "may reasonably be supposed to have been in the contemplation of the parties *at the time they made the contract.*" (Emphasis added) *F.J. McCarty Co. v. Southern Pacific Company,* 428 F.2d 690, 693 (9th Cir. 1970); *Texas Instruments, Inc. v. Branch Motor Express Co.,* 308 F.Supp. 1228, 1230 (D.Mass.1970), *aff'd,* 432 F.2d 564 (1st Cir. 1970); *Marquette Cement Manufacturing Co. v. Louisville & Nashville Railroad,* 281 F.Supp. 944, 947 (E.D.Tenn. 1967), *aff'd per curiam,* 406 F.2d 731 (6th Cir. 1969). *See Globe Refining Co. v. Landa Cotton Oil Co.,* 190 U.S. 540, 544, 23 S.Ct. 754, 755, 47 L.Ed. 1171 (1903); 5 Corbin on Contracts § 1016 (1964).

There is no question that the special damages claimed by plaintiff were not contemplated by the parties at the time the goods were shipped and the contract of carriage represented by the bills of lading was made. No notice of any special circumstances which might give rise to a claim of lost profits was given to any carrier until the three cars had arrived at defendant's Livermore Falls station, when Newman informed Tenneson of plaintiff's urgent need for the feed and the likely consequences if it was not delivered before the holiday weekend.

Plaintiff acknowledges that the general rule would preclude recovery in this case, but urges the applicability to this case of an exception to the general rule that "[w]here the breach consists in the failure to make delivery after the shipment reaches its destination, and when nothing remains to be done by the carrier except to make delivery, the carrier is responsible for such special damages as it was then informed would likely result from its negligence in that regard." *Miller Engineering Co. v. Louisiana Railway & Navigation Co.,* 145 La. 460, 464, 82 So. 413, 414 (Sup.Ct.1919). Plaintiff correctly notes that this special rule is a well-established common law exception to the rule of *Hadley v. Baxendale, supra. Southern Express Co. v. Couch,* 143 Ark. 513, 220 S.W. 823, 834 (Sup.Ct.1920); *Chicago, Rock Island & Pacific Railway v. King,* 104 Ark. 215, 148 S.W. 1035, 1036–37 (Sup. Ct.1912); *Miller Engineering Co. v. Louisiana Railway & Navigation Co., supra; Bourland v. Choctaw, Oklahoma & Gulf Railway,* 99 Tex. 407, 90 S.W. 483, 484–85 (Sup.Ct.1906); *Gulf, Colorado & Santa Fe Railway v. Cherry,* 129 S.W. 152, 153 (Tex. Civ.App.1910); *Texarkana & Fort Smith Railway v. Neches Iron Works,* 57 Tex.Civ. App. 249, 122 S.W. 64, 65 (1909). *See* 13 Am.Jur.2d *Carriers* § 380 (1964); 13 C.J.S. *Carriers* § 229(b) (1939); Annotation, 166 A.L.R. 1034, 1040 (1947). Defendant points out, however, that none of the cited cases arose under the Carmack Amendment and argues that no such exception has been adopted by the federal courts.

■ Defendant has suggested no persuasive reason why the well-established common law exception to the rule of *Had-*

ley v. Baxendale, supra, does not remain viable in cases arising under the Carmack Amendment. No federal case has rejected the special rule, and at least two courts have indicated, in dicta, that the exception is applicable in Carmack Amendment cases. See Gardner v. Mid-Continent Grain Co., 168 F.2d 819, 822–23 (8th Cir. 1948); T.M. Long Co. v. Jarrett, 165 N.J.Super. 117, 397 A.2d 735, 737 (1979). Although, as defendant asserts, "the liability of a carrier for damage to an interstate shipment is a matter of federal law controlled by federal statutes and decisions," Missouri Pacific Railroad v. Elmore & Stahl, 377 U.S. 134, 137, 84 S.Ct. 1142, 1144, 12 L.Ed.2d 194 (1964), the Supreme Court has repeatedly affirmed that the Carmack Amendment codifies the common law rule of carrier liability, id., and that common law decisions, whether by federal or state courts, are proper sources for the determination of the applicable federal law. Adams Express Co. v. Croninger, 226 U.S. 491, 511, 33 S.Ct. 148, 154, 57 L.Ed. 314 (1913); see Secretary of Agriculture v. United States, 350 U.S. 162, 165 n. 9, 76 S.Ct. 244, 247 n. 9, 100 L.Ed. 173 (1956); Chesapeake & Ohio Railway v. Martin, supra, 283 U.S. at 213, 51 S.Ct. at 455; Fraser-Smith Co. v. Chicago, Rock Island & Pacific Railroad, 435 F.2d 1396, 1399 (8th Cir. 1971). The rationale for the special rule is that after a shipment has reached its destination point the risks of actual shipment are complete, and when notice of special circumstances is given at this point, the carrier is capable of taking the necessary precautions to avoid negligent delay of delivery. See Southern Express Co. v. Couch, supra, 220 S.W. at 824; Chicago, Rock Island & Pacific Railway v. King, supra, 148 S.W. at 1036–37; Bourland v. Choctaw, Oklahoma & Gulf Railway, supra, 90 S.W. at 484–85. This rationale clearly applies to this case. Accordingly, the Court holds that plaintiff may recover as special damages lost profits resulting from defendant's failure to deliver the feed grain and concentrate with "reasonable dispatch" as required by the bills of lading.

III

Defendant's motion for summary judgment is denied, and, the parties having so agreed, judgment will be entered for plaintiff against defendant in an amount of damages to be determined by the Court after further hearing.

IT IS SO ORDERED.