**Henry RICHTER, et al., Plaintiffs,**

v.

**NORTH AMERICAN VAN LINES, INC., Defendant.**

**No. Civ. PJM 99–2935.**

United States District Court, D. Maryland.

Aug. 14, 2000.

Leslie A. Nettleford, Benny L. Kass, Kass & Skalet, Washington, DC, Barbara R. Kueppers, Minneapolis, MN, for plaintiffs.

James B. Larrimore, Serio & Higdon, Lutherville, MD, for defendant.

## *OPINION*

MESSITTE, District Judge.

Henry and Sally Richter sue North American Van Lines, Inc. (NAVL), alleging various state and federal causes of action arising out of their interstate shipment of household goods. The case proceeds in several Counts: Count I—Common Law Fraud; Count II—Intentional Infliction of Emotional Distress; Count III—Breach of Contract; Count IV—Carmack Amendment Liability, 49 U.S.C. § 14706; Count V—Unreasonable Rates, Rules and Practices, 49 U.S.C. § 13701; and Count VI—Violation of Maryland Consumer Protection Act (Commercial Law Article, § 13–301).

NAVL has moved for summary judgment. Following oral argument, the Court took the matter under advisement. The Court now GRANTS the Motion in part and DENIES it in part.

## I.

In early August 1997, Henry Richter and his wife Sally were living in Maryland and decided to move to Florida. At the time, Henry Richter was 87 and Sally Richter 78 years old.

The Richters contacted NAVL through its local agent, Beltmann Moving and Storage, to see about NAVL handling the transfer of their household goods. Their plan was have the goods moved by the end of August or early September. On August 8, Ralph Amedeo of Beltmann gave the Richters an estimate of the cost of NAVL's services and on or about August 18 the Richters and NAVL entered into a service agreement.[1] The agreement contemplated the movement of a shipment estimated to weigh 6,000 pounds and a delivery date between September 2 and 3. The payment term was COD and the cost estimate $4,104.60, a "guaranteed not to exceed" price. This meant the final price could be lower, but was guaranteed not to be higher, except for any valuation protection the Richters might later decide to purchase.[2]

The service contract included boilerplate "contract terms and conditions of uniform household goods bill of lading." Among the terms and conditions was one describing the carrier's liability "for physical loss or damage to any articles ... while being carried ... EXCEPT (sic) loss, damage or delay caused by or resulting" from certain acts, omissions or events, including "delay caused by, strikes, lockouts, labor disturbances" and other named events beyond the control of the carrier (Section 1:d). Another term indicated that "the carrier shall not be liable for delay caused by highway obstruction" or other physical impediments "or from any cause other than negligence of the carrier" (Section 2). The same provision went on to say "nor shall the carrier be bound to transport by any particular schedule, means, vehicle or oth-

---

1. The Richters say the agreement was entered into on August 18. NAVL says the agreement was mailed to the Richters on or after that date but signed by them on August 25.

2. In fact, for an additional $70.00, they subsequently did purchase an additional $10,000.00 worth of protection.

erwise than with reasonable dispatch." A final term indicated that any "claim for any loss or damage, injury or delay" had to be filed within 9 months after delivery of the goods to the consignee (Section 6).

On August 25, Sally Richter signed a "Relocation Services Credit/Charge Card Release Form," authorizing NAVL "to charge my credit account identified below, for transportation and related charges on my household goods move." The credit account identified below was a Visa card account and the authorized amount of the charge was $4,174.60. The signature on the card indicated that "all such items will be charged to the credit/charge card account number I have provided." Sally Richter alleges she was told that this authorization was merely for purposes of checking her credit, not so she might be charged in advance of the shipment. Amedeo says Mrs. Richter was expressly given a choice of payment by credit card or cash on delivery and that she elected to pay by credit card. In any event, NAVL drew on the charge within 2 days, prior to rendering the contracted service.

At all relevant times, Henry Richter was not only 87 years old, he was diabetic and had a heart condition and prostate cancer. Sally Richter at 78 years old was asthmatic. Amedeo concedes that he knew the Richters were elderly and that Henry Richter in particular was not in good health. He also understood that the Richters wished to leave their Maryland apartment on August 29 and have their household goods delivered to their new apartment in Florida by no later than September 3.

Amedeo says in the course of his dealings with the Richters he left a booklet with them entitled "Your Rights and Responsibilities When You Move," as required by federal regulation. The Richters say he did not.

On August 28, the NAVL movers came to the Richters' apartment and packed their goods. On August 29, the movers came around in a truck to collect the goods. That same day, Sally Richter signed an NAVL bill of lading showing a shipment weight of 4,160 pounds and an agreed delivery date between September 2 and 3. The same "contract terms and conditions of uniform bill of lading" that formed part of the service agreement were also part of the bill of lading.

NAVL admits that as of approximately mid-day on August 28 it had been notified by the driver scheduled to carry the Richters' goods to Florida that his truck had "filled out" and was not available to accommodate the goods. Accordingly, instead of sending the truck that would carry the goods to Florida, NAVL had Beltmann send one of its trucks over and arranged for the Richters' goods to be stored in the Beltmann warehouse in Maryland until NAVL could schedule another driver and truck to make the delivery to Florida. Amedeo says he telephoned the Richters to advise them that the truck scheduled to take their goods to Florida would be delayed but the Richters deny receiving such a call. Sally Richter says that, although she called NAVL on August 29, it was only to inform them of the hotel and phone number where she and her husband would be staying in Florida and no mention was made of delayed delivery.

The Richters say that, based on NAVL's assurances of when their goods would arrive, they chose to travel to Florida by auto train instead of driving, in order to make sure they would arrive in time to meet their goods. On the morning of September 2, after arriving in Florida, Sally Richter called North American to ask the time at which they should meet the truck at their apartment, only to be told that the couple's goods were in storage in Maryland and would not be delivered for several days. The Richters say they were advised that delivery would take 10 more days, NAVL says the Richters were told it would take up to 5 more days.

In fact, the Richters' goods were picked up from the Beltmann warehouse in Mary-

land on September 5 and delivered to their new apartment in Florida on September 10, seven days behind schedule.

On the assumption that their goods would arrive by September 3, the Richters had packed clothing and medicines for only a few days. Both were extremely upset by the delay and inconvenience, both had physical reactions including trouble with their sleep. Their condition allegedly necessitated consultation with a physician and the need for additional medication. In addition, their daughter Elizabeth Richter, who had traveled from Maryland to assist them, remained in Florida longer than she had intended. As a result, the Richters and their daughter incurred unanticipated expenses for travel, hotel, meals and other costs, and their daughter suffered a loss of wages from her employment.

NAVL seeks summary judgment as to all the Richters' causes of action.

## II.

In order to win a motion for summary judgment, the moving party must demonstrate the absence of a genuine issue of material facts such that the party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists when, viewed in the light most favorable to the non-movant, the evidence presents sufficient disagreement to require submission to a jury. A party moving for summary judgment must show the lack of evidence to support the opponent's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-movant then must demonstrate the presence of a contested issue of fact, pointing to specific evidence, not mere allegations. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. All issues of credibility are resolved in the non-movant's favor. *Miller v. Leathers,* 913 F.2d 1085, 1087 (4th Cir. 1990)

## III.

■ NAVL argues that Counts I (Common Law Fraud), II (Intentional Infliction of Emotional Distress), III (Breach of Contract) and VI (Violation of Maryland Consumer Protection Act of the Complaint) are preempted by the Carmack Amendment, 49 U.S.C. § 14706 and that NAVL is entitled to judgment as a matter of law. The Richters dispute this. The Court agrees with NAVL.

The Carmack Amendment provides for liability of carriers under receipts and bills of lading in interstate commerce, establishing among other things the right of shippers to bring civil actions in federal district court against a carrier alleged to have caused the "loss or damage" to the transported goods. 49 U.S.C. § 14706(d).

NAVL is correct that:

The United States Supreme Court has long interpreted the Carmack Amendment as manifesting Congress' intent to create a national scheme of carrier liability for goods damaged or lost during interstate shipment under a valid bill of lading.

*Shao v. Link Cargo (Taiwan) Ltd.,* 986 F.2d 700, 704 (4th Cir.1993).

As the Supreme Court noted in *Adams Express Company v. Croninger,* 226 U.S. 491, 505–06, 33 S.Ct. 148, 57 L.Ed. 314 (1913):

Almost every detail of the subject [of the liability of a carrier under a bill of lading] is covered so completely [by the Carmack Amendment] that there can be no rational doubt but that Congress intended to take possession of the subject, and supersede all state regulation with reference to it.

"The importance of uniformity has frequently been stressed in subsequent Supreme Court opinions," *Rini v. United Van Lines, Inc.,* 104 F.3d 502, 503 (1st Cir.1997) (citing Supreme Court cases).

There is no question that the Carmack Amendment has been held to preempt a

very broad range of state common law claims relating to the interstate shipment of goods under a valid bill of lading. The most obviously preempted claims are those pertaining directly to loss or damage to goods, whether the theory of recovery has been cast in contract, negligence, fraud or some other theory. *Shao*, 986 F.2d at 705. The reach of the preemption doctrine, however, is not altogether clear. *Rini*, 104 F.3d at 504. Some courts have suggested that the Carmack Amendment does not preempt claims separate and distinct from loss and damage to a shipment. *Morris v. Covan Worldwide Moving, Inc.*, 144 F.3d 377, 382 (5th Cir.1998); *see e.g., Gordon v. United Van Lines, Inc.*, 130 F.3d 282, 289–90 (7th Cir.1997); *Rini*, 104 F.3d at 506. Those courts have suggested, for example, that actions for intentional infliction of emotional distress are not preempted. Another non-preempted state cause of action would arise where an employee of the carrier assaults and injures the shipper. *Morris*, 144 F.3d at 382; *Gordon*, 130 F.3d at 289; *Rini*, 104 F.3d at 506.

Most courts, however, have taken the view that virtually every kind of state cause of action relating to the contract of shipment, including intentional infliction of emotional distress, is preempted. *See e.g., Moffit v. Bekins Van Lines Co.*, 6 F.3d 305 (5th Cir.1993) (*held*, Carmack Amendment preempts claims of misrepresentation, fraud, gross negligence and statutory claims under Texas Deceptive Practices Act); *Pietro Culotta Grapes Ltd. v. Southern Pacific Transp. Co.*, 917 F.Supp. 713 (E.D.Cal.1996) (shipper delayed in delivering goods and some goods damaged; *held*, Carmack Amendment preempts state law causes of action for breach of contract, negligence, fraud, negligent misrepresentation, and interference with economic advantage). These courts have reasoned that any other result would undermine the national uniformity intended by the Carmack Amendment.

There is an undeniable logic in favor of recognizing at least a few state common law claims apart from the Carmack Amendment. Theories of recovery pertaining to how the agreement to ship was entered into, what was represented by the carrier's agent, how the goods were to be packed, when they were supposed to arrive, or what the special needs of the shippers might have been, all relate to the contract of shipment. Insofar as the Carmack Amendment seeks national uniformity with regard to the interstate shipment of goods, it makes sense to merge all such claims into Carmack Amendment actions.

On the other hand, a few causes of action, such as intentional infliction of emotional distress or assault by a carrier on a shipper, have nothing at all to do with the transportation of goods. In these cases, abuse of the shipper by the carrier's agent—emotional in the one case, physical in the other—would in no way relate to how, when, why, or where the goods might get shipped. These are torts that any person could commit at any time against another and thus have only the most incidental link with the contract to ship goods.

In the present case, however, the Court need not decide whether the Richters' claim for intentional infliction of emotional distress is preempted because that claim goes out for other reasons. The tort, under Maryland law, requires, among other things, extreme and outrageous behavior on the part of the defendant and severe emotional distress on the part of the plaintiff. Without in any way minimizing the emotional distress that the Richters may in fact have suffered in this case (but without deciding whether that distress was sufficiently severe so as to satisfy the severe emotional distress element of the tort), the Court concludes as a matter of law that NAVL's conduct cannot be regarded as sufficiently extreme and outrageous as to permit recovery. The Maryland Court of Appeals has repeatedly held that the tort of intentional infliction is to be applied sparingly and only for opprobrious behavior. *Kentucky Fried Chicken Nat. Management Co. v. Weathersby*, 326

Md. 663, 607 A.2d 8 (1992). NAVL's behavior in this case simply does not reach that level and a cause of action based on the tort has no place in this suit.

■ At the same time, the Court agrees that the Carmack Amendment preempts any causes of action for fraud, breach of contract, or breach of Maryland's Consumer Protection Act. All these claims relate to representations allegedly made by the carrier's agents as to how the goods were to be packed, when the goods would arrive and the like, in short to the contract of carriage. Given the extensive case authority establishing the broad preemptive sweep of the Carmack Amendment and given the need for national uniformity in the interstate shipment of goods as recognized by Congress, these common law causes of action must be considered extinguished.

### IV.

Count IV asserts a claim under the Carmack Amendment itself. As to this, NAVL claims that its liability to the Richters is capped at $969.50, which NAVL says represents the full depreciated value of the Richters' property actually lost or damaged in transit. The Richters, according to NAVL, suffered no damages as a result of the delay and, even if they did, NAVL cannot be held liable because it delivered the goods with "reasonable dispatch."

The Richters contend that their consequential damages are considerably higher than $969.50 and include not only a higher value for their lost or damaged goods but also, for the period of delay, unanticipated hotel and meal costs for themselves and their daughter, as well as the reasonable value of the elder care services rendered by their daughter (presumably measured by her lost wages), plus a few other incidentals.

As to the value of the goods actually lost or damaged, a genuine dispute of material fact obviously exists and to that extent

NAVL's Motion for Summary Judgment must be denied.

The other elements of damage claimed in Count V require lengthier comment.

■ The Court notes first that, although the Carmack Amendment refers to compensation for "loss or damage" to goods, it also allows for recovery for unreasonable delay in the delivery of goods, even if not lost or damaged.[3] As stated in *Turner's Farms Incorporated v. Maine Central Railroad Company*, 486 F.Supp. 694, 697–98 (D.Me.1980):

> The duty to transport goods with reasonable dispatch is "an integral part of the normal undertaking of the carrier." *New York, Philadelphia & Norfolk Railroad v. Peninsula Produce Exchange*, 240 U.S. 34, 38–39, 36 S.Ct. 230, 232, 60 L.Ed. 511 (1916). A party injured by the carrier's breach of that duty is entitled to recover damages under the Carmack Amendment. *Southeastern Express Co. v. Pastime Amusement Co.*, 299 U.S. 28, 29, 57 S.Ct. 73, 74, 81 L.Ed. 20 (1936) (per curiam): *New York, Philadelphia & Norfolk Railroad v. Peninsula Produce Exchange*, supra, 240 U.S. at 39, 36 S.Ct. at 232; *Great Atlantic & Pacific Tea Co. v. Atchison, Topeka & Santa Fe Railway*, 333 F.2d 705, 707–08 (7th Cir.1964), cert. denied, 379 U.S. 967, 85 S.Ct. 661, 13 L.Ed.2d 560 (1965).

486 F.Supp. at 697–98. *See also Hector Martinez & Co. v. Southern Pacific Transp. Co.*, 606 F.2d 106 (5th Cir.1979).

In fact, among the boilerplate "contract terms and conditions of uniform household goods bill of lading" in the bill of lading in the present case are numerous express limitations upon NAVL's liability for delay caused by events beyond its control. The clear implication of this is that certain other events, those essentially within the carrier's control, will give rise to contractual liability for delay. Further, the boilerplate language of the bill of lading ex-

---

**3.** In a sense, however, there is a temporary    loss of use of goods when delivery is delayed.

pressly refers to the carrier's obligation to deliver the goods with "reasonable dispatch," an obligation imposed as well by federal regulation. 49 C.F.R. § 375.8(a)(1) (1999).[4]

Accordingly, an action for damages lies under the Carmack Amendment where goods are not transported with reasonable dispatch.

■ What constitutes a reasonable time for delivery of goods depends on the circumstances of the particular case. *See Turner's Farms Inc.*, 486 F.Supp. at 698. Given the advanced ages and health situation of the shippers and given their express need to occupy their new apartment promptly, the 7 day delay that occurred in this case could well be deemed unreasonable by a trier of fact. Hence, a triable issue exists in this regard. That said, the more problematic issues pertain to the damages recoverable for the delay.

Damages recoverable for breach of the duty to deliver the goods with reasonable dispatch are those normally associated with breach of contract. *Hector Martinez & Co.*, 606 F.2d at 106. They include any damages reasonably foreseeable at the time of entry into the contract, *i.e.* the bill of lading. *Id.* They also include special damages if notice was given of special circumstances and the defendant impliedly or expressly assented to bearing the risk of these damages. *Id.; Turner's Farms Inc.*, 486 F.Supp. at 699.

■ Because the delivery of the household goods in the present case was destined for a new apartment, it is fair argument that the parties ought to have contemplated that if the goods did not arrive as promised, the Richters would not be able to occupy their apartment. That would mean they would very likely have to incur hotel expenses until such time as their goods might arrive. Simi-

larly, they might be required to incur meal expenses over and above what they might otherwise incur if occupying their own home and preparing their own meals. These expenses would thus fall within the realm of foreseeable damages for breach of the contract to deliver the goods with reasonable dispatch. Arguably foreseeable as well would be the cost of additional clothing the Richters might have had to buy to tide them over until their shipped clothing might arrive. Finally, such incidentals as telephone calls to NAVL to determine when the goods might in fact arrive would be a likely natural consequence of a breach.

In addition to these general damages, there appears as well to be some basis for recovery of special damages in this case. Amedeo, NAVL's representative, concedes he was aware that the Richters were elderly and frail and that he knew that timely arrival of their goods was important to them. In the Court's view, notice of those facts could sustain a claim for some special damages claimed by the Richters, but not others.

The Court considers the nonsustainable items first.

■ Nothing in the record suggests that the Richters communicated to Amedeo or to any representative of NAVL that they would be traveling to Florida by more expensive means, *i.e.* by auto train and not by car, on the expectation that their goods would arrive by September 3. Nor is there any suggestion that NAVL impliedly or expressly assented to bearing the risk of such expense should delivery be delayed. That expense would be noncompensable.

■ The Richters' claim for mental suffering is likewise noncompensable. The general rule is that emotional disturbance is not a damage recognized for breach of contract. RESTATEMENT (SECOND) OF CON-

---

4. Reasonable dispatch means "the performance of transportation ... on the dates or during the period of time agreed upon by between the carrier and shipper and shown

on the Order for Service/Bill of Lading, *Provided* that the defenses of force majeure as construed by the courts shall not be denied the carrier." 49 C.F.R. § 375.1(b)(2) (1999).

TRACTS, § 353 (1981). As Corbin points out, "[t]he breach of a contract practically always causes mental vexation and feelings of disappointment in the plaintiff." 5 Corbin on Contracts § 1076 (1964). True, there is a line of cases involving carriers that fail to deliver human bodies for burial and the like in which emotional damages have been recognized. RESTATEMENT (SECOND) OF CONTRACTS, *supra.* These are cases where dignity and feelings are integral to the contract and any breach of delivery might well give rise to compensation. There is also a line of cases involving claims against carriers that have evicted patrons from a train or bus, where recovery for injured feelings has been allowed. *Id.* But in the latter cases the theory of recovery has sounded as much in tort as in contract. *Id.*

The Court has located no reported case in which a shipper whose household goods were delayed in delivery was allowed recovery for mental suffering. The absence of case law is certainly a strong sign that such damages are not recoverable. Indeed, it is fair to say that allowing such damages in the commercial context of the shipment of household goods would not only be unforeseeable and unreasonable but "would simply be unfair to the defendant as well as possibly paralyzing to commerce." *Cf. Hector Martinez & Co.,* 606 F.2d at 109. The claim for damages for mental suffering will be disallowed.[5]

■ There remains the value of the assistance that their daughter rendered the Richters during the period of delay. As to this, the Richters claim the value of their daughter's services, presumably—though it is not altogether clear—measuring the value of those services by the wages she lost from her regular job. This claim needs some sorting out. To begin, as a general proposition, it is fair to say that

NAVL, through its agent Amadeo, had notice of the following: That given their age and health condition, being effectively denied access to their apartment might well require that the Richters receive some looking after that would not otherwise be necessary.[6] It is also true, by analogy with nursing care damages awardable in personal injury cases, that the reasonable value of the elder care would be compensable even though rendered by a family member. *See generally* "J.A. Connelly, Annotation, *Damages for Personal Injury or Death as Including Value of Care and Nursing Gratuitously Rendered,*" 90 A.L.R.2d 1323 (1963); *see also Simco Sales Serv. of Maryland, Inc. v. Schweigman,* 237 Md. 180, 205 A.2d 245 (1964). The Court is therefore disposed to recognize the claim for elder care services as possible special damages in this case.

A few qualifications, however, are in order. First, the Richters have indicated that their daughter was going to be with them in Florida for some period of time in any event. The question is whether and to what extent the daughter was obliged to stay on longer by reason of the delayed shipment of the goods. Only the excess period of her stay would be compensable.

A second consideration is what the measure of the value of her services should be. The Richters seek to recover the value of their daughter's lost wages. The majority rule, however, is that damages for gratuitously rendered nursing care are measured by the amount for which nursing care by others could have been obtained, not by the lost wages of the care provider. *See* David W. Knotts, Annotation, *Valuing Damages in Personal Injury Actions Awarded for Gratuitously Rendered Nursing and Medical Care,* 49 A.L.R.5th 685 (1997). True, a few courts have held that the appropriate measure is the wages lost while the services were provided, *Id.; see*

---

5. Because of their intimate nexus with mental suffering, the cost of any medical consultation or medication will also be disallowed.

6. This refers not to medical care but to the special assistance an elderly person might require in getting about and around in a setting outside his or her home, in short to "elder care."

*also Lester v. Dunn,* 475 F.2d 983, 987 (D.C.Cir.1973) (purportedly applying Maryland law) (Robb, J. dissenting) (rejecting lost wages as measure: Parent "should recover only the amount for which reasonably competent nursing and attendance by others could have been obtained"). But in the latter cases, the party seeking recovery for lost wages has invariably been a spouse or the parent of a minor child, and is also a party plaintiff in the proceeding. Knotts, *supra.*

Assuming Maryland recognizes lost wages as a measure of damages for nursing services gratuitously provided, if for no other reason than that the Richters' daughter is not a party to the suit, that measure is unavailable here. The more prevalent measure, however, would still apply. Accordingly, the Richters (but not their daughter) may recover the reasonable value of elder care services rendered to them by her, measured by what such services would have cost if obtained from others.

Summing up with regard to Carmack Amendment claim, assuming they prevail on the issue of liability, the Richters may, upon proper proof, recover:

1) The reasonable value of their goods actually lost or damaged;

2) The cost of their hotel lodging from September 3 through September 10, except that as to their daughter the cost of her lodging would be recoverable only insofar as it might be a necessary part of Item 5 below;

3) The cost of their meals for the same period over and above what they would ordinarily spend for meals prepared at home, except that as to their daughter the cost of her meals would be recoverable only insofar as it might be a necessary part of Item 5 below;

4) The cost of any clothing they were required to purchase by reason of the delay;

5) The reasonable value of any elder care services required as a result of the delay.

Not recoverable would be the cost of the auto train tickets, damages for mental suffering, the cost of medical attention or prescriptions, or lost wages of the Richters' daughter.

V.

■ In Count V of the Complaint, the Richters allege that NAVL is liable for unreasonable practices and other acts in violation of 49 U.S.C. § 13101 *et. seq.* They rely on 49 U.S.C. § 13701(a)(1)(A), which provides that a rate, classification, rule or practice related to transportation or service provided by a carrier involving a movement of household goods must be reasonable. The Richters assert a series of practices engaged in by NAVL, all purportedly violations of DOT regulations, including overbooking, unreasonably overestimating shipment weight, making unauthorized charges when shipments are booked COD, charging unreasonable rates by excessive use of packaging materials, and acting with less than reasonable dispatch. The Richters seek damages pursuant to 49 U.S.C. § 14704(a)(2) and attorneys fees pursuant to 49 U.S.C. § 14704(e).

NAVL does not argue that the Carmack Amendment preempts causes of action under 49 U.S.C. § 14704(a)(2), nor does it dispute that a direct cause of action by a shipper can be brought pursuant to that section. Instead, NAVL denies that the Richters have evidence showing that NAVL violated any of these regulations.

Clearly the parties dispute whether the regulations were violated.

The Richters say they did not receive the publication "Your Rights and Responsibilities When You Move," a summary of the carrier's dispute settlement program, and a written description of the customer complaint and inquiry handling procedures. NAVL says they did.

The Richters say that NAVL knew it was overbooking when it agreed to carry their goods. NAVL denies this.

The Richters say NAVL's representative, Amedeo, admitted the company's practice of overestimating shipment weight to protect himself and his company. NAVL denies this.

The Richters say NAVL used excessive cartons and packing materials to pad the cost of the move and rely on their daughter's testimony that she saw 10 to 15 boxes packed with only 1 item, such as a small pot or small plastic trash container. NAVL denies this.

The Richters suggest that they were deceived by NAVL when Sally Richter executed a form authorizing the cost of the move to be charged against her credit card, alleging that she was told that the form was necessary to check her credit and that the cost of the move would be payable COD. NAVL denies this, saying Sally Richter chose the credit option.

Finally, the Richters contend that NAVL violated the federal regulation that requires "shipments to be transported with reasonable dispatch," 49 C.F.R. § 375.8(a)(1) (1999), as well as the regulation that requires that the carriers give notice of any delay "as soon as it becomes apparent to the carrier that it will be unable to provide the service in compliance with the terms of the order for service." *Id.* § 375.8(a)(2). NAVL says it acted with reasonable dispatch and that the Richters were notified as soon as it became apparent to NAVL that the delivery would be delayed.

As far as the parties have taken the matter, there are obviously genuine issues of material fact, as a result of which NAVL's Motion for Summary Judgment as to this count will be denied. However, the Court takes this occasion to make a number of observations relative to further trial of the matter.

First, assuming that the asserted violations of the regulations are actionable, the Court has yet to rule on the evidence that would be competent to establish the violations. Some violations may require expert testimony, *e.g.* from persons familiar with the interstate shipment of household goods on the issue of the relevant standard and what constitutes a violation of the standard. This might be true, for example, with regard to how diffusely or compactly household goods in interstate transit ought to be packed.

■ There is also the question of what damages would be recoverable as a result of any established violation. Two examples are illustrative. The Court is able to rule as a matter of law at this time (and does so) that the mere failure of NAVL to furnish the booklet about a shipper's rights would give rise to nominal damages only. The fact that the booklet may not have been given would not support an action for all the consequential and special damages the Richters seek in this case.

On the other hand, violation of the regulation that requires the delivery of goods "with reasonable dispatch" might well give rise to the consequential and/or special damages discussed *supra.* But the Court also notes that a cause of action based on violation of this regulation would essentially duplicate the cause of action based on breach of the bill of lading under Count IV (the Carmack Amendment count), wherein damages for delay can be recovered if delivery has not been made "with reasonable dispatch." Attorneys fees would also be recoverable under the Carmack Amendment count. *See* 49 U.S.C. § 14708(d).

Even so, Count V withstands summary judgment for now. Whether and to what extent it may reach the trier of fact and what damages, if any, may be recovered will depend on what witnesses are called and what proximately caused damages are demonstrated.[5]

---

5. Based on the Court's comments at oral argument on NAVL's Motion for Summary

Judgment, the Richters have asked for leave to file an Amended Complaint. In the

## VI.

For these reasons, Defendant's Motion for Summary Judgment will be GRANTED IN PART and DENIED IN PART.

A separate Order implementing this Opinion will be issued.

### *ORDER*

Upon consideration of Defendant NAVL's Motion for Summary Judgment and Plaintiff Harry and Sally Richter's Opposition thereto and Plaintiffs' Motion for Leave to File Amended Complaint and Defendant's Opposition thereto, it is for the reasons stated in the accompanying Opinion this 14 day of August, 2000

ORDERED:

1) The Motion is GRANTED IN PART and DENIED IN PART;

2) The Motion is GRANTED as to Counts I, II, III, and VI;

3) The Motion is DENIED as to Counts IV and V (subject to rulings in the Opinion as to various evidentiary and damages issues);

4) Plaintiffs' Motion for Leave to File Amended Complaint is DENIED;

5) A pre-trial conference will be held in this case on the 28th of September, 2000 at 4:30 p.m.

Amended Complaint, they propose to add a Count VII, styled "Violation of Household Goods Regulations, 49 C.F.R. § 375." Having considered the matter further, the Court agrees with NAVL that the allegations of Count VII are essentially those already set forth in existing Count V. Accordingly, the Richters' Motion for Leave to File Amended Complaint will be DENIED.