**TUBE CITY, INC., Plaintiff**

v.

**BOSTON & MAINE CORPORATION,
et al., Defendants**

**No. CIV. 01–81–P–H.**

United States District Court,
D. Maine.

Nov. 16, 2001.

_____

Deirdre M. Smith, Esq., Drummond, Woodsum & MacMahon, Portland, ME, W. Scott Fewell, Esq., Raizman & Frischman, P.C., Pittsburgh, PA, for Tube City Inc., plaintiffs.

Thad B. Zmistowski, Esq., Eaton, Peabody, Bradford & Veague, Bangor, ME, for Boston & Maine Corporation dba Guilford Rail System, Maine Central Railroad dba Guilford Rail System, Springfield Terminal Railway Company dba Guilford Rail System, defendants.

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

HORNBY, Chief Judge.

This is a lawsuit under the Carmack Amendment. _See_ 49 U.S.C. § 11706 (1994). The rail carrier unreasonably delayed the delivery of scrap iron, taking two months to deliver when two to three weeks were expected. As a result, the shipper was injured in the amount of $12,880. The reason for the resulting damage, however, was not that scrap iron spoils or loses its intrinsic value with the passage of time or that the consignee no longer had use for it, but because the contract price had changed in the interim. The plaintiff enters·into periodic contracts to sell scrap iron at prices it negotiates partly by assessing the market for this commodity (here, it entered into a July contract to sell 2,000 tons at $138 per ton). _See_ Plaintiff's Response to Defendants' Statement of Material Facts ¶ 16 (method for price determination) (hereafter "Pl.'s Resp."); Plaintiff's Opposing Statement of Material Facts ¶ 2 (contract terms) (hereafter "Pl.'s Opp'n"). Then it proceeds to purchase the scrap iron at bulk (here in relevant part, 500 tons at $115 per ton), _see_ Pl.'s Opp'n ¶ 3, and arrange its delivery. In August, the consignee agreed to accept the delivery at the July price, _see_ Pl.'s Opp'n ¶ 4, 7, but the carrier delivered 322 tons of the 500 tons late in October, and in the intervening two months the shipper's negotiated contract price with its consignee had declined to $98 per ton (at a loss of $40 per ton for 322 tons, a total of $12,880). _See_ Pl.'s Opp'n ¶¶ 10, 11; Pl.'s Resp. ¶ 15. I conclude that these damages are not fore-

seeable, but are "special damages" within the meaning of *Hadley v. Baxendale,* 9 Ex. 341, 156 Eng. Rep. 145 (1854), which applies in Carmack Amendment cases. *See, e.g., Hector Martinez and Co. v. Southern Pacific Transp. Co.,* 606 F.2d 106, 109 (5th Cir.1979) (applying *Hadley* to a Carmack Amendment claim for damages resulting from delay). They are therefore unrecoverable in the absence of special notice to the carrier. *See Starmakers Publ'g Corp. v. Acme Fast Freight, Inc.,* 646 F.Supp. 780, 782 (S.D.N.Y.1986) (granting summary judgment because bill of lading was inadequate notice that untimely delivery would result in otherwise unforeseeable loss); *Marjan Int'l Corp. v. V.K. Putnam, Inc.,* 1993 WL 541204, 1993 U.S. Dist. Lexis 18243, at *34–36 (S.D.N.Y. Dec. 28, 1993) (awarding special damages where carrier was explicitly told that untimely delivery would cause financial harm); *Turner's Farms, Inc. v. Maine Central·R.R. Co.,* 486 F.Supp. 694, 699 (D.Me.1980) (noting that, absent an exception to the *Hadley* rule, special damages would not be awarded because bill of lading did not indicate that untimely delivery would result in otherwise unforeseeable lost profits). There was no such notice. *See* Pl.'s Resp. ¶¶ 9, 10. The defendants' motion for summary judgment is GRANTED.

SO ORDERED.